John H. ROWE, Jr., Administrator of the Estate of Larry Mitchell Rowe, Jerry Rowe, an infant, and Lloyd G. Rowe, Appellants,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellee.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant,

v.

John H. ROWE, Jr., Administrator of the Estate of Larry Mitchell Rowe, Jerry Rowe, an infant, and Lloyd G. Rowe, Appellees.

Dallas Eugene HODGE, an infant, William E. Hodge, individually and t/a Powhatan Marina, and Harry H. Kanter and H. Lee Kanter, t/a Kanter & Kanter, Appellants,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellee.

Nos. 10794–10796.

United States Court of Appeals Fourth Circuit.

Argued Jan. 13, 1967.

Decided Feb. 28, 1967.

Sidney H. Kelsey, Norfolk, Va. (Kelsey & Rabinowitz, Norfolk, Va., on brief), for John H. Rowe, Jr., and others.

Paul M. Lipkin, Norfolk, Va. (Goldblatt & Lipkin, Norfolk, Va., on brief), for Dallas Eugene Hodge and others.

Guilford D. Ware, Norfolk, Va. (Baird, Crenshaw & Ware, Norfolk, Va., on brief), for United States Fidelity & Guaranty Co.

Before HAYNSWORTH, Chief Judge, and BELL and WINTER, Circuit Judges.

WINTER, Circuit Judge:

In Rowe v. Brooks, 329 F.2d 35 (4 Cir. 1964), we affirmed judgments, aggregating $93,250.00, against Dallas E. Hodge, an infant, William E. Hodge, his father, Miles S. Brooks and Frank Carr, co-partners, trading as Williamsburg Sporting Goods and Hobby Shop, and Mr. and Mrs. Charles C. Rosson. The judgments were obtained for personal injuries to Jerry Rowe, an infant, to Lloyd G. Rowe, his father, and for the death of Larry M. Rowe, another son of Lloyd G. Rowe, as the result of a collision of two motorboats, one operated by the Hodge son, in which the Rowes were passengers, and the other operated by Mrs. Rosson, in the waters of Powhatan Creek, which empties into the James River near Williamsburg, Virginia. From the proof it was established that the motorboat operated by the Hodge son was owned by Brooks and Carr, who, by oral agreement with the Hodge father, who operated a marina, had given him custody of the boat for purpose of sale and agreed to pay him a commission for his services if he were successful in effecting a sale. The accident occurred while the Hodge son was demonstrating the boat to the Rowes, who were prospective purchasers. H. Lee Kanter, Esq. and Messrs. Kanter, Kanter & Sachs, attorneys-at-law, represented the Hodges at the original trial and in the appeal to this Court.

In Rowe v. Brooks, supra, we also reversed a judgment limiting the liability of Brooks and Carr to the stipulated value of the motorboat. Reversal proceeded from our determination that the Hodge son should have had a federal license to operate the boat, that he had no such license and, in fact could not have obtained one because he was under age, that the watercraft was rendered unseaworthy because it was being operated by one who was statutorily incompetent, and that Brooks and Carr were in privity with, or had knowledge of, the unseaworthiness.

United States Fidelity and Guaranty Company (U. S. F. & G.) had issued a policy of comprehensive general-automobile liability policy to Brooks and Carr (the "Brooks-Carr policy") which, by endorsement, was made applicable to watercraft under certain circumstances with maximum coverage of $50,000.00. U. S. F. & G. had also issued a comprehensive general liability policy to the Hodge father (the "Hodge policy"), with maximum coverage of $50,000.00. Both policies were in effect on July 3, 1960, the date of the collision between the two motorboats.

After we affirmed the judgments for damages, efforts at collection obviously ensued and additional litigation, from which the current appeals proceed, was instituted to determine the liability, if any, of U. S. F. & G. on either of its policies, and the duty, if any, of U. S. F. & G. to defend the Hodges under either of its policies. U. S. F. & G. had refused to defend the Hodges under either policy and they had engaged the services of H. Lee Kanter, Esq. and his colleagues. Messrs. Kanter & Kanter intervened in this litigation and asserted their claim for professional services.

The district judge held (United States Fidelity and Guaranty Company v. Rowe, 249 F.Supp. 993 (E.D.Va.1966)), that under the Brooks-Carr policy U. S. F. & G. was liable to the Rowes, but had no contractual obligation to defend the Hodges, and that under the Hodge policy U. S. F. & G. had no liability to the Rowes and no contractual obligation to defend the Hodges. The Hodges appeal from the determination that there was no obligation on U. S. F. & G. to defend them under either the Brooks-Carr or the Hodge policies. The Rowes appeal from the determination that U. S. F. & G. was not obligated to pay the judgments under the Hodge policy, and U. S. F. & G. appeals from the determination that it was liable to the Rowes under the Brooks-Carr policy. We must decide whether U. S. F. & G. was liable to the

Rowes under the Brooks-Carr policy or, alternatively, whether it was estopped to deny such liability, whether U. S. F. & G. was liable to the Rowes under the Hodge policy or, alternatively, whether it was estopped to deny such liability, and whether the Hodges were entitled to be defended by U. S. F. & G. under either policy. We think the district judge correctly adjudged the rights of the parties, and we affirm.

## Brooks-Carr Policy

### A.—Coverage:

By the terms of the Brooks-Carr policy, U. S. F. & G. agreed, up to the limits of liability of the policy, "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident." An exclusion in the policy stated that liability for bodily injury including death should not exist in regard " * * * to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft if the accident occurs away from the premises owned by, rented to or controlled by the Named Insured * * *." This exclusion, however, was modified by an endorsement to the policy which provided that the exclusion " * * * referring to watercraft shall not apply to any accident due to the ownership, maintenance or use of any watercraft classified in the Declarations." The declarations referred to private outboard motorboats exceeding 10 h. p., a classification which included the motorboat operated by the Hodge son. This endorsement, in turn, contained other pertinent language because it stated, too, "It is understood and agreed that this policy exclude[s]d coverage for boats *while used to carry passengers for a charge* or while rented to others." (emphasis supplied) When these provisions are considered together, insurance coverage under the policy extended to bodily injury or death to the Rowes unless they were "passengers for a charge."

It is not disputed that the Rowes paid no cash consideration or other present consideration of value for the demonstration ride afforded them in the motorboat. The Hodges, Brooks and Carr hoped that the Rowes would purchase the boat, in which event the proceeds of sale would be compensation to them but, of course, at least by reason of the accident, as well as destruction of the boat, no sale was ever consummated.

U. S. F. & G. contends that in Rowe v. Brooks, supra, we decided that the Rowes were passengers for compensation, and thus we have already decided that the Rowes were "passengers for a charge" so as to exclude them from coverage. U. S. F. & G. relies on the literal language of our opinion in Rowe v. Brooks, supra, as well as the automobile passenger cases cited therein, holding, under the guest statutes of many jurisdictions, that a passenger for a demonstration ride with the prospect of a future sale was not a guest, but was a passenger for a consideration. U. S. F. & G. also argues that because coverage for carrying "passengers for a charge" demands a higher premium, that term is to be construed strictly against coverage, unless it is shown that the premium was demanded and paid. Michaelson v. Simula, 264 Mich. 457, 250 N.W. 264 (1933); Orcutt v. Erie Indemnity Company, 114 Pa.Super. 493, 174 A. 625 (1934); Neilson v. American Mutual Liability Insurance Co. of Boston, 111 N.J.L. 345, 168 A. 436 (1933). Concededly, in this case, no such premium was paid and, therefore, so the argument runs, the general rule that ambiguities in the insurance policy are to be construed against the insurer is inapplicable.

■ The district judge carefully analyzed and discussed the automobile cases referred to in our opinion and cited to him in the insurance litigation and, while he did not find them conclusive, he was of the view that no court had ever held that a prospective purchaser of a boat or vehicle was to be regarded as a "passenger for a charge" within the meaning of

an insurance policy. He was of the view, also, that the cases dealing with guest statutes are not controlling upon the status of a party who was a prospective purchaser of a boat or automobile in regard to the construction of an insurance policy. That the precise point in issue here has not been previously decided, we are in accord, and we are content to refer to the discussion of the authorities arising under guest statutes contained in the district judge's opinion. Id., 249 F.Supp., at 996–1000. To this collection of decisions, we would add only Houston Fire & Casualty Ins. Co. v. Ivens, 338 F.2d 452 (5 Cir. 1964). We are even more strongly in accord with the statement of the district judge that authorities under the guest statutes of various states are not controlling upon the status of an alleged guest in regard to the construction of an insurance policy, and we do not consider that what we decided in Rowe v. Brooks, supra, determines what must be decided in this case.

In Rowe v. Brooks, supra, we were concerned with the question of whether Brooks and Carr, the owners of the motorboat operated by the Hodge son, should be permitted to limit their liability under the Limitation Statute, 46 U.S. C.A. § 183. That statute, so far as pertinent, permits an owner to limit his liability for any injury by collision occasioned " * * * without the privity or knowledge of such owner or owners" to the amount or value of his interest in the vessel. We held the vessel unseaworthy because the Hodge son had failed to comply (and in fact could not have complied) with §§ 24.10–3 and 157.30–30, 46 C.F.R., adopted under the Federal Motor Boat Act of 1940, as amended, 46 U.S.C.A. § 526, et seq. These regulations required the operator of a motorboat "while carrying passengers for hire" to be licensed. "Carrying passengers for hire" was defined as the carriage of passengers "for a valuable consideration, whether directly or indirectly flowing to the owner." The Hodge son had no license and was under age to be eligible for one.

It should be clear that policy considerations, and the resultant rules of construction to be applied, raised in situations concerning guest statutes and questions such as the one we decided in Rowe v. Brooks, supra, are not present in cases involving the rights of the parties under a contract of insurance, and that the former are not indicative of the resolution of questions arising under the latter. The guest statutes, in derogation of the common law, limit liability of the operator of a motor vehicle to his passengers. Because they are in derogation of the common law, close questions arising under them of whether a passenger is a guest are to be resolved in favor of a holding that the passenger is not a guest. In our previous decision, the requirement for licensing was applicable to "the carriage of any person or persons by a vessel for a valuable consideration, whether directly or indirectly flowing to the owner, charterer, operator, agent or any other person interested in the vehicle." 46 C.F.R. § 24.10–3. Not only from the phrase "whether directly or indirectly flowing," but also from the basic consideration that safety regulations are remedial in nature and should be given a broad interpretation, we were under a duty to construe this regulation liberally. Moreover, the question of interpretation of the regulation arose in the context of limitation of liability. Limitation of liability is not a doctrine of American common law. Gilmore & Black, The Law of Admiralty (1957 Ed.) § 10–2. It exists solely by statute, again in derogation of the common law and again to be strictly construed for that reason. Thus, the liberal construction to be given the regulation was buttressed by the strict application to be given the limitation statute.

These considerations do not apply to a policy of insurance, a statement of contractual relationship between the parties. Where public policy has no direct interest, the parties are free to contract as they please. "Passengers for a charge" as a statement of their relationship normally and usually embodies

the concept of an immediate cash payment, or other present consideration, or liability for the same. There is in the policy no language permitting the charge to flow "directly or indirectly" to the owner or operator. While there is no public policy to grant limitation of liability strictly, there is also no public policy or rule of construction to classify passengers as other than guests. We conclude, therefore, that the policy should be given its ordinary and usual meaning and that the Rowes, who paid nothing for the demonstration ride and who incurred no liability therefor, should not be considered as "passengers for a charge."

■■ This holding is buttressed by the usual Virginia rule of construction that where there is ambiguity an insurance contract is to be construed against the insurer which prepared it. Ellis v. New Amsterdam Cas. Co., 169 Va. 620, 194 S.E. 687 (1938). Particularly is this so because U. S. F. & G.'s argument in regard to a higher premium for the carriage of passengers for hire is lacking in merit. An insurance contract, like any other contract, is to be interpreted by consideration of all of its terms. Endorsement 10 to the Brooks-Carr policy provides that the policy, with certain exceptions not pertinent here " * * * applies to named partners of the partnership named in the declarations only while acting within the scope of their duties as such." When U. S. F. & G. wrote the Brooks-Carr policy it knew, or was chargeable with knowledge, that Messrs. Brooks and Carr operated a sporting goods and hobby shop, and that it was no part of their business enterprise to carry passengers by watercraft for compensation. If the "passengers for a charge" exclusion is given the broad meaning which U. S. F. & G. asserts, then the premium charged for eliminating the watercraft exclusion was charged and collected without any obligation on the part of U. S. F. & G. to extend coverage to any operation of watercraft within the scope of the business of the partnership. Such a construction would be unreasonable because it would render meaningless the purported extension of coverage, since the only use within the scope of the duties of the partners would be for demonstration purposes.

We conclude, therefore, that U. S. F. & G. is liable to the Rowes under the Brooks-Carr policy. We need not, therefore, consider any question of estoppel.

### B.—*Duty to Defend Under the Brooks-Carr Policy:*

■ We agree with the opinion of the district judge that U. S. F. & G. had no duty to defend the Hodges under the Brooks-Carr policy, and we adopt the portion of his opinion in this regard. Id., 249 F.Supp., at pp. 1001–1002. We add only the comment that the language " * * * if the Named Insured is a partnership, the unqualified word 'Insured' also includes any partner therein but only with respect to his liability as such," manifestly refers to the situation where the named insured is designated only by trade name and does not include the names of the individual partners. While we concluded in our previous decision that Brooks and Carr were joint venturers, so that Brooks and Carr were chargeable with the actual knowledge of the Hodges that the motorboat was not seaworthy, such an arrangement would not make the Hodges a named insured.

We reject the argument that the endorsement eliminating the watercraft exclusion points to a different result. The endorsement nullified an exclusion, on the conditions stated in the endorsement, but it cannot be read to modify the definition of "Named Insured" in the policy. Certainly, it did not purport to have this effect.

### *Hodge Policy*

### A.—*Coverage:*

■ The district judge found that the Hodge policy provided no coverage to the Hodges for this accident. He reached this conclusion because of the exception in the policy excluding coverage with respect to the ownership, maintenance, operation, use, loading or unloading of

watercraft " * * * *if the accident occurs away from premises owned by, rented to, or controlled by the Named Insured* * *," and because of his finding that the accident occurred one-fourth of a mile from the marina and hence did not occur on "premises owned by, rented to, or controlled by" the Hodge father. We think this determination was correct. The conclusion, therefore, followed that the policy afforded no coverage.

■■■■ U. S. F. & G. is not estopped to deny coverage under the Hodge policy. We have decided that the Hodge policy, by its terms and under the facts which gave rise to liability on part of the Hodges, did not provide coverage to them. Our previous decision in Insurance Co. of North America v. Atlantic National Ins. Co., 329 F.2d 769 (4 Cir. 1964), is a complete answer to the estoppel argument. Estoppel may not operate to extend coverage, as distinguished from preventing assertion of a right to deny coverage because of the breach of a condition in the policy, except in the rare instance where an insurer, with knowledge of the lack of coverage, assumes and conducts a defense without either disclaiming liability or under a reservation of its rights. There is nothing in this record to provide a factual basis to invoke the exception to the well established rule previously stated. We conclude, therefore, that the Rowes have no rights under the Hodge policy.

B—*Duty to Defend:*

■■■■ The Hodge policy obligated U. S. F. & G. to " * * * defend any suit against the Insured alleging such injury, sickness, disease or destruction [for which the policy provides coverage] and seeking damages on account thereof, *even if such suit is groundless, false or fraudulent* * * *" (emphasis supplied). It is the law of Virginia, applicable here, that U. S. F. & G. would be obliged to defend the Hodges against any suit *alleging* liability for which insurance coverage is provided, even if the latter is subsequently shown to be groundless, false or fraudulent, as well as any suit in which such liability is proved to exist. London Guarantee & Accident Co. v. C. B. White & Bros., 188 Va. 195, 49 S.E.2d 254 (1948).

The district judge concluded that U. S. F. & G. was under no obligation to defend the Hodges under the Hodge policy. He reached this conclusion, however, solely upon the ground that the Hodges, in the prior litigation, were not adjudicated liable to the Rowes on any ground that the policy insured against. Id., 249 F.Supp., at p. 1007. In this he was correct, but he did not discuss, even if he did consider, whether there was any obligation on U. S. F. & G. to defend the Hodges because of the allegations made in the libel filed against them.

■■■■ An examination of the libel discloses that the Rowes alleged that they were injured while passengers in a motorboat owned by Brooks et al., under the custody of the Hodge father and operated by his son " * * * in the waters of Powhatan Creek near James City County, Virginia." The libel avers that the accident occurred while the Hodge boat was at a speed sufficient for it to plane, and places the situs of the accident approximately a half mile above the highway bridge. There is no allegation, factual or conclusory, that the accident occurred on the premises of the marina owned and operated by the Hodge father, and we would infer from the allegations to which we have made reference that the accident was alleged not to have occurred on the premises of the marina. It necessarily follows that the allegations of the libel were insufficient to render operative U. S. F. & G.'s covenant to defend, aside from any question of whether those allegations were subsequently shown to be groundless, false or fraudulent.

The judgment of the district court is Affirmed.