Pursuant to the memorandum filed herein this day,

IT IS HEREBY ORDERED that defendant's motion to dismiss, to strike or for a more definite statement is granted in part and denied in part as follows:

Counts I, II, V, VI and VII of plaintiff Broadmoor Realty, Inc.'s complaint against defendant are dismissed.

Counts VI and VII of plaintiff Collegiate Enterprises, Inc.'s complaint are dismissed.

Defendant's motion is denied in all other regards.

**Laura TONKON and Seymour Tonkon**

v.

**DENNY'S, INC.**

**Civ. A. No. 86–1186.**

United States District Court,
E.D. Pennsylvania.

Dec. 22, 1986.

Thomas R. Yorko, Allen L. Rothenberg, Philadelphia, Pa., for plaintiffs.

Christine C. Levin, Mark W. Ryan, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

MEMORANDUM OPINION

CAHN, District Judge.

This is a diversity action to recover damages for injuries suffered in a fall on a public sidewalk outside "Denny's" restaurant in Mexico City, Mexico. Plaintiffs, husband and wife, are Pennsylvania citizens. Defendant, a California corporation subject to jurisdiction in this court because of its business activities in Pennsylvania, is a 20% owner of Denny's, S.A. de C.V. ("S.A. de C.V."), a Mexican company which has licensed the use of the "Denny's" name from the defendant. S.A. de C.V. owns and operates the "Denny's" restaurant in Mexico City.

Plaintiffs claim that the defendant is liable for its licensee's alleged failure to properly maintain the sidewalk near the restaurant. Defendant has moved for summary judgment or, in the alternative, for dismissal on the ground of *forum non conveniens*. Because I find that Mexican law governs this action I will defer ruling on the defendant's motion until both parties are given an opportunity to prove the content of Mexican law under Federal Rule of Civil Procedure 44.1.

The factual context, viewed in the light most favorable to the plaintiffs, can be briefly stated. While vacationing in Mexico City, plaintiff Laura Tonkon suffered a broken hip when she fell on the crowded public sidewalk outside "Denny's" after patronizing the restaurant. Mrs. Tonkon was hospitalized for about two weeks in Mexico, where she underwent surgery twice, before returning to the United States where a third operation was performed. Her hip had to be replaced and she remains permanently disabled. Plaintiffs, however, did not notify the Mexican police or any of the restaurant employees of the accident, and defendant and its licensee were apparently unaware of the incident until this suit was filed two years later.

Plaintiff claims that her fall was caused by a hole in the sidewalk located about eight feet to one side of the restaurant's entrance. The hole, approximately 10 inches square and several inches deep, was created by the absence of one of the cement tiles which formed the sidewalk. There is only one entrance to the restaurant which leases its space on the first floor of a multi-tenant four-story building from a third party.

Three issues are presented by the defendant's motion: what body of substantive law should be applied; is the defendant entitled to summary judgment under the applicable law; and whether this court is an appropriate forum for this action. Defendant contends that Mexican law should govern all of the substantive issues in this action. I agree. A federal court exercising diversity jurisdiction applies the choice of law rules of the forum state in order to determine which law governs the substantive issues before it. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

In tort actions Pennsylvania has abandoned the rule that the law of the place of injury governs substantive issues in favor of a flexible rule which requires analysis of the policies and interests underlying the issues before the court. *Griffith v. United Airlines*, 416 Pa. 1, 203 A.2d 796 (1964). This approach seeks to give to the place having the most interest in the problem paramount control over the legal issues arising out of the particular factual context. *Id.* at 22, 203 A.2d at 806. *See Blakesley v. Wolford*, 789 F.2d 236 (3d Cir.1986); *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970).

One method used by the Pennsylvania courts to determine which state has the greater interest in the application of its law is to analyze qualitatively the contacts each state has with the accident. *Cipolla*, 439 Pa. at 566, 267 A.2d at 856. Contacts considered vital to this analysis include, but are not limited to, place of injury, place of conduct, domicile of the parties, and the place where the relationship between the parties is centered. *Griffith*, 416 Pa. at 15, 203 A.2d at 802–3. Consideration of these contacts and the general interests of Mexico and Pennsylvania clearly compels a find-

ing that Mexico has the greater interest in this action.

Analyzing the relevant contacts, the only significant contact Pennsylvania has with this injury is the domicile of the plaintiffs. Mexico is the site of the injury and the alleged failure to properly maintain the sidewalk. Mexico is also the domicile of the licensee whose duty is at issue.

Plaintiffs claim that the place where the injury occurred was purely fortuitous because they had not gone to Mexico City with the intent of visiting the Denny's restaurant. This argument is without merit. The point is that plaintiffs voluntarily and intentionally travelled to Mexico. When a party voluntarily and intentionally travels to another state, the location of an injury incurred there is not fortuitous. *See Blakesley,* 789 F.2d at 249. In *Blakesley,* the court noted the importance of the place of injury:

> [C]ases applying the *Griffith/Cipolla* test make clear that where, as here, the place where the injury occurred was not fortuitous, as for example, in an airplane crash, the place of injury assumes much greater importance, and in some instances may be determinative. *See Broome v. Antler's Hunting Club,* 595 F.2d 921, 924 (3d Cir.1979) and cases cited therein.

*Id.* at 243.

Plaintiffs also claim that the relationship between the parties is centered in Pennsylvania because that is where the parties first met through the plaintiffs' visits to local "Denny's" restaurants and where defendant, through its advertisements, invited the defendants to visit Denny's restaurants wherever they may be located. I disagree. This case does not involve the type of "continuing relationship" which should justify the application of the law of the state in which the parties first had contact.

The relationship between the parties for the purpose of this action began and ended in Mexico when the plaintiffs patronized the restaurant. Whatever duty was required of the licensee arose by virtue of the plaintiffs' status as business invitees, not

the licensor's prior dealings. The mere fact that the plaintiffs had previously visited a "Denny's" restaurant in Pennsylvania does not mean that a "relationship" was formed between the parties.

Denny's national advertisements also cannot be the basis for finding the parties' relationship is in Pennsylvania. Our Court of Appeals in *Blakesley* rejected the argument that an initial contact in the plaintiff's state and the defendant's subsequent invitation to the state where the injury occurred was sufficient to require the application of the law of the plaintiff's state: "Characterizing that initial Pennsylvania [Medical] consultation as an 'invitation' to come to Texas to undergo further medical procedures does not magically bring all further relationships between [the parties] under [Pennsylvania's law]." *Blakesley,* 789 F.2d at 242.

Beyond the fact that Mexico clearly has the most significant contact with this accident, Mexico has the greater interest in applying its own law. The crucial threshold issue in this action is the duty, if any, of the defendant's licensee to repair the missing tile in the public sidewalk. Mexico has a significant interest in regulating the maintenance of its sidewalks, whereas Pennsylvania has no interest in Mexican sidewalks.

Plaintiffs argue that Pennsylvania also has an interest in the safety of its citizens on public sidewalks, wherever they may be. While this is certainly true, *see Mintzer v. Hogg,* 192 Pa. 137, 43 A. 465 (1899); *Fisher v. City of Philadelphia,* 112 Pa. Super 226, 170 A. 875 (1934), the specific duty of a property owner to maintain and repair the public sidewalk abutting his property generally flows from a municipal ordinance explicitly authorized under the Pennsylvania statutes. *See* 53 Pa.Stat.Ann. § 1891 (Purdon 1974); *Ignatowicz v. City of Pittsburgh,* 375 Pa. 352, 100 A.2d 608 (1953). Therefore, even under Pennsylvania law it is clear that the interest of each municipality in regulating its sidewalks is substantial, and, indeed, it is arguable that Pennsylva-

nia law would look to Mexico City law for guidance under these facts.

Mexico also has a strong interest in regulating the conduct of corporations in its country, particularly foreign companies who invest in Mexican enterprises and, therefore, bolster its troubled economy. One scholar, cited by the Pennsylvania Supreme Court in *Cipolla*, explained this interest as follows:

> [In this case] we are concerned with a state's provision of standards of conduct and financial protection for people within its bounds. However, now we must recognize that the state's plan has been drawn, not merely for the benefit of the endangered public, but also with concern for the people whose activities may cause the harm. Therefore, the state has refrained from imposing what its lawmakers would view as an unreasonably exacting standard of conduct or an unduly burdensome duty to provide financial protection upon people and corporations engaged in activities within the state.

David F. Cavers, The Choice-of-Law Process 146 (1965). Mexico has adopted a certain balance between protecting its citizens and creating a hospitable climate for business activities and foreign investment. A United States court should not impose Pennsylvania standards of liability on Mexican business activities and disturb this delicate balance.

Further, Pennsylvania has recognized that it is fundamentally unfair to impose liability which exceeds the legitimate expectations of an individual acting within his state. In *Cipolla* the court stated:

> Inhabitants of a state should not be put in jeopardy of liability exceeding that created by their state's laws just because a visitor from a state offering higher protection decides to visit there.

439 Pa. at 567, 267 A.2d at 856–57. If a Pennsylvania standard of liability applies to this case, then a Mexican business entity would be subject to a variable duty of care depending on the residence of potential plaintiffs. Mexico clearly has a strong interest in protecting business entities within its boundaries from this uncertainty.

In summary, the significant contacts which Mexico has with this accident and its strong interest in regulating the conduct at issue, protecting its business entities from uncertain liability, and maintaining the desired economic incentives to invest in the Mexican economy outweigh the Pennsylvania contacts and interests urged by the plaintiff. Therefore, I find that the Pennsylvania choice of law rule requires that I apply Mexican law to the substantive issues of this action.

Because I find that Mexican law must be applied, I will defer ruling on the defendant's motion for summary judgment until both parties have an opportunity to supplement their prior memoranda and affidavits under Federal Rule of Civil Procedure 44.1. I will also defer any consideration of the defendant's motion to dismiss the case on grounds of *forum non conveniens* pending my analysis of the difficulty of properly applying Mexican law. An appropriate order follows.

## ORDER

AND NOW, this 22 day of December, 1986, upon consideration of the defendant's motion for summary judgment, and the plaintiffs' responses thereto, IT IS ORDERED that:

1. Mexican law shall govern all substantive issues presented in this action, and

2. Any memoranda of law or affidavits seeking to prove the context of Mexican law under F.R.C.P. 44.1 shall be filed no later than sixty days from the date of this order, and each party will have ten days thereafter to supplement their proof in response to the other party's submissions, and

3. A final decision on defendant's motion will be deferred until both parties have an opportunity to comply with this order.