Pamela M. CANNON, Admx. and Personal Representative of the Estate of Brent E. Cannon, Deceased, on behalf of Decedent's heirs-at-law and next-of-kin, and on her own behalf

v.

HILTON HOTELS CORP.: American Hoist & Derrick Co.; Tishman Construction Corp. of New Jersey; Fellow Read & Associates; Atlantic City Electric Co.; John Carl Warnecke & Associates, Inc.; and The Home Group.

Civ. A. No. 85–5056.

United States District Court,
E.D. Pennsylvania.

March 16, 1987.

On Motion for Reconsideration
April 16, 1987.

Robert C. Daniels and Robert Mongeluzzi, Philadelphia, Pa., for plaintiff.

Frederick T. Lachat, Jr., Arthur Toensmeier and Mark Segal, Jos Goldberg and Marc Reuben, Frederick C. Hanselmann, Robert Kelly and James Bee, Philadelphia, Pa., Gunther O. Carrle, Bala Cynwyd, Pa., Stephen Yusem and D. Barry Pritchard, Norristown, Pa., for defendants.

MEMORANDUM

O'NEILL, District Judge.

This is a wrongful death and survival action arising out of the electrocution of Brent E. Cannon on August 30, 1983, during the course of his employment, when the crane which he was operating came in contact with a power line on the Atlantic City Hilton Hotel and Casino construction site in Atlantic City, New Jersey. Plaintiff, decedent's wife, brings this action against Hilton, the site owner; Tishman, the contractor; American Hoist & Derrick, the crane manufacturer; Fellows Read & Associates, the site engineer; John Carl Warnecke & Associates, the architect; Atlantic City Electric, owner of the power line; and The Home Group, an insurance company. Ole Hansen and Sons, decedent's employer, has been joined as a third party defendant. Jurisdiction is based upon diversity of citizenship and the amount in controversy exceeds $10,000. 28 U.S.C. § 1332.

The parties have agreed that I should determine, at this stage of the proceedings, whether the damages law of New Jersey or Pennsylvania applies to this case. They also have stipulated to the facts which they deem relevant to this determination. As the wrongful death statutes of the two states are identical, the parties' briefs have focused upon which state's survival act should apply.[1] The New Jersey Act allows

1. A survival statute "merely *continues* the exist-   ence of an injured person's claim as an asset of

damages for pain and suffering and lost earnings accruing between the time of injury and death. N.J.S.A. 2A:15–3. The Pennsylvania Act allows such damages but also permits recovery for net loss of future earnings. 20 Pa.C.S.A. § 3371; *Skoda v. West Penn Power Co.*, 411 Pa. 323, 335, 191 A.2d 822, 829 (1963); *see Kaczkowski v. Bolubasz*, 491 Pa. 561, 421 A.2d 1027 (1980).

I must apply the choice of law rules of the forum state, Pennsylvania, to determine which state's law applies. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In *Griffith v. United Airlines*, 416 Pa. 1, 203 A.2d 796 (1964), the Pennsylvania Supreme Court abandoned the strict *lex loci delicti* choice of law rule in favor of a "more flexible rule which permits analysis of the policies and interests underlying the particular issue before the Court." 416 Pa. at 21, 203 A.2d at 805. The Court adopted this approach because it allowed the "forum to apply 'the policy of the jurisdiction' most intimately concerned with the outcome of [the] particular litigation'." Id. at 22, 203 A.2d at 806 (citing *Auten v. Auten*, 308 N.Y. 155, 161, 124 N.E.2d 99, 102). In *Cipolla v. Shaposka*, 439 Pa. 563, 566, 267 A.2d 854, 856 (1970), the Court explained that particular contacts between a state and an accident are relevant to determining which state has the greater interest in applying its law only if they relate to the "policies and interests underlying the particular issue before the Court." The Court cautioned that

> [A] mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than a quantitative scale.

*Id.* See also, *Myers v. Commercial Union Assurance Cos., et al.*, 506 Pa. 492, 496–497, 485 A.2d 1113, 1115–1116 (1984).

According to the Third Circuit, *Griffith* combines the approaches of "interest analysis" and of the Restatement (Second)

of Conflict of Laws. *Blakesley v. Wolford*, 789 F.2d 236, 239 (3d Cir.1986). Interest analysis involves a qualitative appraisal of the relevant states' policies regarding the controversy. Section 145 of the Restatement provides that the rights and liabilities of the parties regarding an issue of tort law are determined by the law of the state with the "most significant relationship" to the issue. The contacts to be evaluated in determining which state has the most significant relationship are:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

(d) the place where the relationship, if any, between the parties is centered.

The Third Circuit first looks to the policies and interests advanced by each state's rules and, second, considers the states' relevant contacts to those interests. *Blakesley*, 789 F.2d at 239.

I have not found a decision of any court applying the *Pennsylvania* choice of law rules to the question whether the Pennsylvania or the New Jersey Survival Act should apply in a particular case. I have reviewed several decisions from the District of New Jersey addressing the issue under New Jersey choice of law principles. *See, Mathis v. Motley*, 649 F.Supp. 38 (D.N. J.1986); *Pollock v. Barrickman*, 610 F.Supp. 878 (D.N.J.1985); *Nolan v. Foundations and Structures*, No. 83–1372 (D.N.J. April 19, 1984) [Available on WESTLAW, DCT database]; *Colley v. Harvey Cedars Marina*, 422 F.Supp. 953 (D.N.J. 1986); *Foster v. Maldonado*, 315 F.Supp. 1179 (D.N.J.1970). In the view of the Third Circuit, New Jersey and Pennsylvania employ the same choice of law analysis:

> The court determines first the governmental policies evidenced by the laws of each related jurisdiction and second the factual contacts between the parties and each related jurisdiction. A state is

---

his estate, while the usual wrongful death statute creates a *new* cause of action based upon the death itself." S. Speiser, *Recovery for*

*Wrongful Death* 14:1 (2d ed. 1975 & Supp.1986) (emphasis in original).

deemed interested only where application of its law to the facts in issue will foster that state's policy.

*Henry v. Richardson-Merrell, Inc.,* 508 F.2d 28, 32 (3d Cir.1975).

It is clear that Pennsylvania has a significant interest in the administration of the estates of its decedents and the well-being of their families. *Griffith,* 416 Pa. at 25, 203 A.2d at 804. Brent Cannon was a resident of Pennsylvania at the time of his death. His wife and children reside here, and his estate will be administered here. Consequently, Pennsylvania has an interest in applying its more generous survival statute to the benefit of decedent's estate.

The District of New Jersey decisions are split regarding New Jersey's interest in applying its Survival Act.[2] *Mathis, Colley* and *Nolan* adopt the view that the New Jersey Act evidences a legislative policy to protect New Jersey defendants from large recoveries. *Pollock* and *Foster* adopt the view that the legislature was concerned with resident decedents rather than resident defendants. By adopting a survival statute that allows a decedent's action to survive, but limits recovery of lost earnings to those which would have been earned between injury and death, the New Jersey Legislature intended, in my view, to further the interests of both resident decedents and resident defendants. As defendants Hilton, Tishman, Atlantic City Electric, and Fellows Read & Associates are all domiciled in New Jersey, New Jersey has an important interest in the application of its Survival Act.

Furthermore, a qualitative evaluation of the contacts which each state has with decedent's death establishes that New Jersey is undoubtedly the state with the most significant relationship to this issue. Consideration of the Restatement factors show that the relevant contacts are New Jersey contacts. The injury occurred in New Jersey: Brent Cannon came in contact with the power line there and died there while in the course of his employment. "[W]here, as here, the place where the injury occurred was not fortuitous, as for example,

in an airplane crash, the place of injury assumes much greater importance and in some instances may be determinative." *Blakesley,* 789 F.2d at 243.

The conduct which is alleged to have caused Brent Cannon's death also occurred in New Jersey: the placement of power lines and storage facilities on the Atlantic City site, safety control at the site, the actual contact with the power line. American Hoist & Derrick's alleged conduct of defectively designing the crane may have occurred elsewhere, but the conduct of the defect causing injury, *i.e.,* coming into contact with the power line without a protective device, occurred in New Jersey.

Regarding citizenship of the parties, both Pennsylvania and New Jersey, as the domiciles of plaintiff and most defendants, respectively, are interested jurisdictions. "[T]he factor of the parties' citizenship is for all practical purposes neutralized inasmuch as the two interests which are identified effectively cancel each other out." *Blakesley,* 789 F.2d at 241. Nonetheless, it is important to recognize that this case involves New Jersey defendants (Hilton, Tishman, Atlantic City Electric, Fellows Read & Associates) acting in New Jersey; they would expect New Jersey law to apply. American Hoist & Derrick (Minnesota), The Home Group (New York) and Warnecke (California) are neither New Jersey nor Pennsylvania residents; however, their connection to Brent Cannon arose in New Jersey. These defendants do not argue that their respective states have any interest in whether Pennsylvania or New Jersey damages law applies in this case.

The parties' relationship is centered in New Jersey. They were brought together by a construction project in New Jersey. Decedent was employed at that construction project and died there in the course of his employment; he was not simply passing through the state. Although he was initially supplied by a Philadelphia union, Local 454, he was employed by a New Jersey corporation, Ole Hansen and Sons, and went to work in New Jersey every day.

---

**2.** I have not found any New Jersey state court decisions on point.

The fact that the employment relationship was centered in New Jersey is further supported by the fact that his family is currently receiving workmen's compensation payments from the state of New Jersey.

The contacts with Pennsylvania which plaintiff emphasizes are essentially personal contacts—where his family resides, where he filed income taxes, where he deposited some of his salary. These contacts, unlike the Restatement factors analyzed above, are not central to the policies and interests underlying the issue before the Court today—that of which damage law should apply to this wrongful death and survival action stemming from decedent's electrocution during the course of his employment in New Jersey. The fact that decedent had these personal contacts with Pennsylvania does not mean that he carried the benefits of Pennsylvania law with him wherever he went. *Cipolla*, 439 Pa. at 567, 267 A.2d at 856–857.

Lastly, plaintiff argues that a Pennsylvania Court would apply Pennsylvania law to this issue simply because that law would permit the greater recovery for a Pennsylvania decedent. Plaintiff has provided no persuasive authority for this proposition. In *Blakesley, supra,* a malpractice action brought by a Pennsylvania resident in this District against a Texas doctor regarding an operation performed in Texas, the Third Circuit held, under Pennsylvania choice of law principles, that the law of Texas should apply to the issues of informed consent and damages, even though the law of Pennsylvania would have permitted a greater recovery than that of Texas.

### ORDER

AND NOW, this 16th day of March, 1987, upon consideration of the parties' briefs concerning the application of New Jersey or Pennsylvania damages law to this action, it is hereby ORDERED that New Jersey damages law applies.

### ON MOTION FOR RECONSIDERATION

Plaintiff has moved for reconsideration of my Memorandum and Order of March 16, 1987, which held that New Jersey law governs the issue of damages in this wrongful death and survival action. Because the motion appears to raise new matter, I will state the reasons for its denial.

Plaintiff argues that I incorrectly concluded that the method of calculation of damages recoverable under each state's wrongful death act is identical. This argument does not require reversal of my previous conclusion. In her original motion regarding choice of law, at page 4, plaintiff represented to the Court that the wrongful death acts of the two states are identical and that the "real" issue before the Court is which survival act applies. She proceeded to address that issue alone. Moreover, my March 16 Memorandum does not conclude that the methods of calculation of wrongful death damages in the two states are the same, but only that the acts are the same. Finally, the method of calculation of damages under the statute is relevant to the issue of choice of law only if it sheds light upon a state's interest in the application of its law. To the extent it is relevant in this case, New Jersey's method displays concern for New Jersey defendants. *See Tenore v. Nu-Car Carriers, Inc.,* 67 N.J. 466, 474 and n. 6, 341 A.2d 613, 617 and n. 6 (1975) ("the defendant in a wrongful death action is entitled to have the recovery discounted to present value").

Plaintiff also argues that my determination that the New Jersey Legislature intended to further the interests of both resident decedents and resident defendants in adopting the New Jersey Survival Act is erroneous. She states that "legions" of New Jersey state court cases show that the Legislature intended solely to benefit the survivors of decedents by adopting the Wrongful Death and Survival Acts. However, plaintiff does not cite a New Jersey state court decision regarding the Survival Act. The New Jersey state court decisions regarding the Wrongful Death Act which she cites are cited for general propositions which do not conflict with my decision.[1] Furthermore, these cases involved New

---

1. The sparse legislative history cited by plaintiff also does not conflict with it.

Jersey plaintiffs seeking recovery against New Jersey defendants. They were not choice of law cases. Legislative intent regarding application of the New Jersey Wrongful Death Act to a non-resident seeking recovery from a resident was not an issue.

Accordingly, plaintiff's motion will be denied.