**In re AIR CRASH DISASTER AT MANNHEIM, GERMANY: ON SEPTEMBER 11, 1982.**

**No. MDL 555.**

United States District Court, E.D. Pennsylvania.

Oct. 25, 1983.

Jim McCarthy, Los Angeles, Cal., Robert Silverman, Washington, D.C., Mark Corchin, Philadelphia, Pa., for plaintiff.

Hastings Griffin, E. David Chanin, Philadelphia, Pa., Barry Reingold, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Presently before the court is a motion by the plaintiffs to consolidate all related cases and to determine applicable law in this air disaster case. This action arises out of a helicopter crash near Mannheim, West Germany on September 11, 1982. The helicopter, a United States Army CH–47 "Chinook", was designed, manufactured and assembled by the Boeing Vertol, a division of defendant Boeing, in Pennsylvania. As a result of the accident, all 46 crew and passengers on board were killed. Numerous actions have been brought against Boeing by foreign and American personal representatives and next-of-kin.[1] The asserted theories of liability include breach of warranty, negligence and strict liability, all bearing on the airworthiness of the helicopter. It is plaintiffs' argument that the cases should be consolidated because the liability issues are identical in each action. The plaintiffs further seek to have this court determine that Pennsylvania law should be applied to all plaintiffs for both the liability and damages issues.

Boeing does not contest consolidation of those cases brought by the surviving relatives of active duty United States Servicemen who were killed in the crash. Nor does it contest the application of Pennsylvania liability law to those same cases "in the absence of a showing that some other jurisdiction has a greater interest in the application of its law to a specific issue." ("Boeing's Memorandum in Opposition to Plaintiff's Motion to Consolidate All Related Cases and to Determine Applicable Law," p. 2).[2] Defendant strongly objects, however, to the application of Pennsylvania law to the "foreign cases" and urges the court to apply the law of West Germany. This court denied the defendant's motion to dismiss the "foreign cases" on the ground of *forum non conveniens* in a Memoran-

---

1. At last count, there were thirty-one "foreign" actions filed on behalf of 34 European passengers; the passengers were residents of West Germany (2), Wales (9), and France (23). Of the United States servicemen, the decedents resided in various locations prior to the incident while their survivors assert that they resided in various states. The domicile of servicemen is, of course, a difficult determination to make due to their frequent relocations. One of the plaintiffs' attorneys conceded this problem at oral argument. (Tr. 15–16, 9/29/83.)

2. Interestingly, Boeing itself does not attempt to show that another jurisdiction *does* have a greater interest. Several of the American plaintiffs urge the court to apply Pennsylvania law regardless of Boeing's general objection. American plaintiffs in cases nos. 82–4337 (*Schoen-*

*born*), 82–4539 (*Sutton*), 82–4540 (*Cruz*), 82–4541 (*Schoenborn*) and 83–3163 (*Hudson*) argue that Pennsylvania law should apply to their cases essentially because it would require a great deal of time and effort to determine the domicile of the deceased American servicemen. They argue this approach would also "avoid[ ] the need to determine whether the same choice of law should apply to the survival causes of action as to the wrongful death causes of action contained in the complaint." [Certain American Plaintiffs' Memorandum Concerning Consolidation and Determination of Applicable Law at 4.] Their underlying thesis that by applying Pennsylvania law the court will be establishing predictability, uniformity and efficiency is not without appeal.

dum Opinion and Order dated July 14, 1983.

■■■ Federal subject matter jurisdiction arises from the parties' diversity of citizenship. Therefore, this court is required to follow the choice of law rules of the states where the various actions were originally filed. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Other than the two transferred cases,[3] all cases were filed in Pennsylvania. Although the parties state that Pennsylvania has generally adopted the Restatement (Second) Conflicts of Laws (1971),[4] analysis of the Pennsylvania choice-of-law cases reveals that the Commonwealth actually uses a hybrid conflict of laws approach, requiring that a court look to which state, of the potentially interested states,[5] "has the greater interest in the application of its law. . . ." *Cipolla v. Shaposka*, 439 Pa. 563, 566, 267 A.2d 854 (1970). This approach requires "an analysis of the policies behind the competing laws. . . ." *Id.* at 565, 267 A.2d 854.

In analyzing the methodology used by Pennsylvania choice-of-law cases pertaining to tort actions, the Court of Appeals for the Third Circuit has determined that Pennsylvania has "adopted a flexible methodology entailing analysis of the policies and contacts of the various concerned jurisdictions." *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978). The circuit court recognized that:

. . . . .

This methodology combines the approaches of both Restatement II (contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy). It takes into account both the grouping of contacts with the various concerned jurisdictions and the interests and policies that may be validly asserted by each jurisdiction. Fairly read, *Griffith*, in drawing upon Restatement II's analysis and 'interest analysis' may be said to have combined both in the *Griffith* 'flexible rule.' It is that rule which the *Griffith* court claims 'permits analysis of the policies and interests underlying the particular issue before the court.' 203 A.2d at 805. *See Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966). Under Pennsylvania law, it is firmly established that this approach is applicable in tort actions. *Id.*

The principles established in the Restatement (Second) pertaining to this case are:

§ 145.  The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

---

**3.** Two cases, *Brock v. Boeing*, C.A. 83–2448 and *Trumpfheller v. Boeing*, C.A. 83–2467 were transferred in August, 1983, from the Northern District of California pursuant to an order by the Multidistrict Litigation panel. Neither side has presented the argument that California choice-of-law principles should apply to those cases, although such an argument is proper. *See Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The plaintiffs in the transferred cases are surviving relatives of German decedents. They allege diversity jurisdiction based on the assertion that Boeing is a corporation established under the laws of the state of Delaware with its principal place of business in Washington and doing business in California. Application of California choice-of-law principles would not cause a different result in this situation. The court will not separately set out its analysis of the transferred cases.

**4.** Pennsylvania abandoned the traditional *lex loci delecti* rule in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964).

**5.** References to states includes foreign sovereigns for the purposes of this Memorandum Opinion.

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

§ 6. Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Restatement (Second) of Conflict of Laws* (1971).

The approach set out by Professor David F. Cavers in Cavers, *The Choice-of-Law Process* (1965) plays a part in Pennsylvania's flexible methodology. *See Cipolla, supra,* 439 Pa. at 561, 267 A.2d 854. In *Broome v. Antlers' Hunting Club,* 595 F.2d 921 (3d Cir.1979) a tort action decided after the Third Circuit's opinion in *Melville, supra,* the circuit court recognized that the Pennsylvania Supreme Court looks to the Cavers approach in applying choice-of-law principles.

The jurisdictions to be considered on the liability issue in the cases *sub judice* are Pennsylvania (the place of design, manufacture and assembly of the helicopter, also known as the "place of defendant's conduct"), West Germany (the situs of the crash and resulting death, i.e. "place of injury") as well as the domicile of some of the foreign decedents), Great Britain and France (the domiciles of the other foreign decedents).[6]

Although the liability allegations in these cases are based essentially on negligence and products liability, it is the products liability allegation that appears to be at issue in the conflicts of law dispute. In Pennsylvania § 402A of the Restatement (Second) of Torts (1965) was adopted in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1965). The thrust behind strict liability is to effectively make the manufacturer "the guarantor of his products' safety." *Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 319 A.2d 903, 907 (1974). The Pennsylvania Supreme Court has stated the Commonwealth's interest behind § 402A liability as follows:

> Our courts have determined that a manufacturer by marketing and advertising his product impliedly represents that it is safe for its intended use. We have decid-

6. As noted in footnote 2, neither the plaintiffs nor the defendants actually argue that the states from which the next-of-kin of the American servicemen are citizens have a qualitatively greater interest than does Pennsylvania. At oral argument, the Michigan parents of the decedent in the case captioned *Barbara Scott v. Boeing,* C.A. No. 83–0970, sought to intervene in that case. They argued that Michigan law should be applied to them, asserting that the Michigan Wrongful Death Statute, M.C.L. § 600.2922 specifically allows them to recover damages for loss of society and companionship, but that Pennsylvania law does not provide for their recovery. The plaintiffs in *Scott* who are the decedent's wife (who is also the representative of the estate), and the decedent's minor child, argue that the motion to intervene is premature because the parents are merely seeking a determination of the distribution of the estate if wrongful death damages are recovered. However, the Michigan Wrongful Death Statute has been interpreted to allow the representative of the estate to present evidence of the loss of society and companionship of all members of the class of persons *potentially* entitled to take under the intestacy laws regardless of the particular legal relationships existing at the time of death. *Crystal v. Hubbard,* 414 Mich. 297, 324 N.W.2d 869 (1982). Therefore, the parents would appear to have a potential interest in the litigation of the case.

ed that no current societal interest is served by permitting the manufacturer to place a defective article in the stream of commerce and then to avoid responsibility for damages caused by the defect.

*Id.*

The court has further articulated the following economic considerations in Section 402A cases:

The realities of our economic society as it exists today forces the conclusion that the risk of loss for injury resulting from defective products should be borne by the suppliers, principally because they are in a position to absorb the loss by distributing it as a cost of doing business.... Courts have increasingly adopted the position that the risk of loss must be placed upon the supplier of the defective product....

*Azzarello v. Black Brothers Co.*, 480 Pa. 547, 391 A.2d 1020, 1023–1024 (1978). Pennsylvania obviously has an interest in applying its liability law to a resident manufacturer acting within its home borders.

Regarding the laws of West Germany, Great Britain and France, the defendant appends the citations of those laws to its memorandum but fails to argue that the laws of either France or Great Britain apply. Instead, using a thinly disguised "center of gravity" conflict-of-laws approach, the defendant argues that all the foreign cases should be determined under the law of West Germany,[7] both with regard to liability and damages. Boeing argues that the NATO Status of Forces Agreement, 4 U.S.T. 17972, T.I.A.S. 2846 ("NATO–SOFA Treaty") is the law to be applied. In relevant part, Article VIII provides:

5. Claims ... arising out of acts or omissions of members of a force or civilian component done in the performance of official duty, or out of any other act, omission or occurrence for which a force or civilian component is legally responsible, and causing damage in the territory of the receiving State to third parties, ... shall be dealt with by the receiving

State in accordance with the following provisions:

(a) Claims shall be filed, considered and settled or adjudicated in accordance with the laws and regulations of the receiving State with respect to claims arising from the activities of its own armed forces.

(b) The receiving State may settle any such claims, and payment of the amount agreed upon or determined by adjudication shall be made by the receiving State in its currency.

.    .    .    .    .

(e) The cost incurred in satisfying claims pursuant to the preceding subparagraphs ... shall be distributed between the Contracting Parties, as follows:

(i) Where one sending State alone is responsible, the amount awarded or adjudged shall be distributed in the proportion of 25 per cent chargeable to the sending State...

Boeing argues that the Treaty sets out three principles applicable to these cases: (1) German local law provides the appropriate rule of decision; (2) the United States is liable without fault under German law, and (3) the remedy under the Treaty and the German Air Traffic Law, which they fail to append to their memorandum, is the exclusive remedy against the United States. The defendant concedes that the cases addressing the exclusive remedy provided under the NATO–SOFA Treaty "do not address whether the treaty would bar an action against a third-party such as a military contractor [Boeing]; nor do they address whether the treaty would bar an action by a third-party against the United States for contribution or indemnity." (Boeing's Memorandum in Opposition to Plaintiffs' Motion, p. 15, n. 3).

Boeing argues that its potential liability is closely linked to that of the United States Government as a result of the Treaty and the incorporated West German law. It is Boeing's position that, under the

---

**7.** Because this is not a "takeoff" or "landing" case, the fact that the incident occurred in West Germany is a fortuity. A few of the decedents are from that country.

NATO–SOFA Treaty, Boeing is entitled to a credit in the cases *sub judice* for any payment made to foreign nationals through the administrative proceedings. The Treaty itself does not provide for this asserted "credit" nor does case law establish such a "credit" in the form of contribution or indemnity.

More importantly, however, is the question of what interest would be furthered by applying the West German law.[8] If, in seeking to limit compensation to injured parties, West Germany is protecting resident defendants from excessive liability, the policy would not be furthered in this situation. Boeing is not a West German defendant.

The plaintiffs are correct in arguing that these cases essentially present a "false conflict" on the liability issue. The defendant has made no conflicts of law argument in support of its contention that West German law, or any law other than Pennsylvania law, should be applied. Viewed through interest analysis, it becomes clear that the interest of no other jurisdiction would be furthered by applying a law granting less protection to the plaintiffs. On the other hand, the interests articulated by the Pennsylvania courts in seeking to hold its manufacturers as guarantors of their products' safety would certainly be furthered by application of its law. Holding the defendant to a higher level of liability presents little problem in this case because the court would simply be applying the law of the state where the defendant's conduct occurred.

In *Cipolla, supra,* the Supreme Court of Pennsylvania determined that a defendant from a defendant-protecting state, acting within its own state, should be permitted to rely on its home law. The defendant in this case is from a plaintiff-protecting state. The plaintiffs are merely seeking to apply the laws of the defendant's state. Professor Cavers, whose theory is relied upon to some extent by the Pennsylvania courts, would apparently agree that it is not "unprincipled or a denial of 'conflicts justice'" for a state to "adopt a choice-of-law principle preferring its own standards of liability and financial protection when the duties these impose on its citizens are higher than those in the states to which they may resort, regardless of who may be the victims of their misconduct." Cavers, *Cipolla and Conflicts Justice,* 9 Duq.L. Rev. 360, 368–369 (1971). In *Broome v. Antlers' Hunting Club,* 595 F.2d at 925, the Third Circuit predicted that Pennsylvania courts would adopt such a principle.

The Pennsylvania principle of full compensation and placing the risk of loss on its manufacturers would be furthered by applying Pennsylvania liability law to all of the plaintiffs and applying Pennsylvania damage law to the foreign plaintiffs. In those cases where a plaintiff is from a state giving lower protection under its damages law than Pennsylvania, the state of conduct of the defendant, the court will apply the higher Pennsylvania protection. The interests of deterrence and retribution, as set out in Pennsylvania strict liability cases, would thereby be furthered without impairment to another state's interest.

It is also not unfair, arbitrary or a denial of the equal protection of the laws to hold a defendant manufacturer to the liability and damage laws of its own state, when acting in its own state, where that law provides greater protection to the plaintiff than the plaintiff's own state.

■ The court concludes that Pennsylvania liability law will govern the liability issues in these cases. The court further determines that in those cases where Pennsylvania compensatory damages law provides greater protection than does the damages law of another jurisdiction, Pennsylvania law will be applied. West German law is therefore rejected as the law to be applied to the foreign cases.

---

8. The parties inform the court that West German law does not provide for strict liability. French and United Kingdom law also fail to provide for strict liability. *See* Civ.Code, Article 1382 and Fatal Accidents Act of 1976.

In only one case has the court been presented with a jurisdiction's law that would provide greater protection under the Wrongful Death Statute than does Pennsylvania. As noted in footnote 6, in *Scott v. Boeing*, C.A. No. 83–0970, the parents of the decedent are entitled, under Michigan law, to present to the jury evidence of loss of companionship and society due to the death of their son. The Michigan Supreme Court has noted that the state's Legislature has adopted the judicially announced view

> that life has value not only to the person who has been deprived of its enjoyment by a wrongful death but to the spouse and next of kin who have lost those benefits of association we summarize in the word 'companionship.' 383 Mich. [251] 299, 174 N.W.2d 836.

*Crystal v. Hubbard*, 414 Mich. 297, 324 N.W.2d 869, 879 (1982) (citing *Breckon v. Franklin Fuel Co.*, 383 Mich. 251, 299, 174 N.W.2d 836 (1970) (dissenting opinion)).

The court will grant the motion of the decedent's parents to intervene in the *Scott* suit to give them the opportunity to present to the court their argument as to why the Michigan Wrongful Death Statute should be applied to the *Scott* case.

Although the court has determined that application of Pennsylvania damages law is proper in these cases when that law provides greater protection, it makes no determination as to which law shall be applied if another jurisdiction provides greater compensatory relief. Because the trial will be on the liability issue first, the court leaves that determination to the time of trial. The parties are invited to present to the court their briefs on the issue of applicable domestic damages law in those cases where a jurisdiction would provide greater compensatory relief than Pennsylvania law.

Finally, it is clear that consolidation is warranted on the issue of liability in that the actions involve common questions of law or fact. Rule 43 of the Federal Rules of Civil Procedure.

ORDER

The court hereby ORDERS:

1. The cases shall be consolidated for the purpose of determining the issue of liability.

2. The law of Pennsylvania shall apply to all cases on the issue of liability.

3. The law of Pennsylvania shall apply to all of the issues in the cases involving the surviving relatives of European citizens.

4. The court shall determine applicable law on the issue of damages in the cases involving the surviving relatives of American citizens at the time of trial in accordance with the accompanying Memorandum Opinion.

5. The motion of Mr. and Mrs. William F. Scott to intervene in the action *Barbara Scott v. The Boeing Company*, C.A. No. 83–0970 is GRANTED for the limited issue of damages and applicable law.

IT IS SO ORDERED.