Harold **BROOME, as Executor of the Last Will and Testament of Raymond H. Broome, Deceased, Appellant,**

v.

**ANTLERS' HUNTING CLUB.**

No. 78–2033.

United States Court of Appeals, Third Circuit.

Argued Feb. 15, 1979.

Decided March 30, 1979.

See also D.C., 448 F.Supp. 121.

Henry Valent, Valent & Callanan, Watkins Glen, N.Y., David R. Bahl, McCormick, Lynn, Reeder, Nichols & Sarno, Williamsport, Pa., for appellant.

Norman I. Klein, Fischer, Kagan, Klein & Miller, Clifton, N.J., for appellee.

Before ALDISERT, ADAMS and HIGGINBOTHAM, Circuit Judges.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question for decision in this diversity case is whether the district court properly determined that under the rule of *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 62 S.Ct. 1284, 86 L.Ed. 1757 (1941), a Pennsylvania court would apply Pennsylvania negligence law to determine liability and New York survival law to measure damages. The action was brought under the Pennsylvania survival statute by a New York plaintiff seeking to recover for fatal injuries sustained in Pennsylvania. Because we believe that a Pennsylvania court would apply its own law to both liability and damages, we reverse.

I.

On January 17, 1976, while snowmobiling in Lycoming County, Pennsylvania, Raymond H. Broome, a New York resident, hit a steel cable strung across an access road on property owned by Antlers' Hunting Club, a Pennsylvania corporation. He died instantly of a broken neck. Decedent's executor instituted a diversity action in the Western District of New York on December 8, 1976 against Antlers' Country Club. Upon discovery that the site of the accident was not owned by Antlers' Country Club, a new complaint alleging negligence and seeking damages was filed against appellee Antlers' Hunting Club on January 18, 1977, one year and one day after the fatal accident.

Appellee moved the district court for dismissal under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction over the defendant corporation, which did no business in New York, or, in the alternative, for an order transferring venue to Pennsylvania. The New York district court denied appellee's motion to dismiss, but transferred the case to the Middle District of Pennsylvania.

After the transfer, the appellee moved to amend its answer in order to plead Pennsylvania's one year statute of limitations as a defense to appellant's wrongful death ac-

tion, and if that motion were granted, to dismiss the complaint. The motion to amend was granted and the motion to dismiss was treated as a motion for summary judgment and was also granted. Relying on *Klaxon, supra,* the court determined that under Pennsylvania choice of law rules the Pennsylvania statute of limitations would apply to appellant's wrongful death claim whether New York or Pennsylvania substantive law applied. Consequently appellant's wrongful death action was barred by Pennsylvania's one year statute because it had been filed one day after the time limit had elapsed. Appellant was ordered to submit an amended complaint setting forth a survival action within seven days or face dismissal of his case with prejudice.

Appellant's amended complaint under the Pennsylvania survival act[1] fared no better than his original one. The district court determined that both Pennsylvania, the site of the accident, and New York, the domicile of the decedent and the residence of his survivors, had an interest in the application of their respective laws. The court ruled that New York law should govern the damages recoverable under the survival action, although Pennsylvania law should determine the liability of a resident defendant. The court reasoned that the existence of New York survivors indicated a stronger interest on the part of New York, that the site of the accident was "clearly fortuitous," that there could have been no reliance on the law of a state where the injury occurred when the tort was unintentional, and fur-

ther, that though the place of the injury might have an interest in compensating those who rendered medical aid to the injured, if death was immediate such a state would have no interest.

The appellee then filed a motion to dismiss the complaint for lack of subject matter jurisdiction. The New York survival statute expressly limits recovery to damages "accruing before death" and does not include damages "for or by reason of death," except funeral expenses.[2] Because death was instantaneous, no damages due to medical expenses or pain and suffering accrued before death, nor could lost earnings, properly characterized as damage "by reason of death," be recovered under the statute. Only funeral expenses, therefore, could be awarded under the New York law governing damages. Because they amounted to only $2,637, subject matter jurisdiction in federal court was lacking. Appellant's complaint was dismissed; he appeals to this court from the district court orders applying New York law to damages and dismissing his complaint.

II.

There is no precise Pennsylvania precedent that governs the case at bar. It thus becomes necessary to inquire into discrete elements of the problem, and then, guided by existing Pennsylvania case law, make the prediction required by *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We begin our analysis

---

1. The pertinent statute reads as follows:

   20 Pa.C.S.A. § 3371:
   All causes of action or proceedings, real or personal, except actions for slander or libel, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.

   20 Pa.C.S.A. § 3372:
   Substitution of the personal representative of a deceased party to a pending action or proceeding shall be as provided by law.

   20 Pa.C.S.A. § 3373:
   An action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive.

2. N.Y. Est., Powers & Trusts Law § 11–3.2(b) provides for actions to be brought by personal representatives of a decedent so that no cause of action for personal injury would be lost because of the death of the person in whose favor that cause existed.

   N.Y. Est., Powers & Trusts Law § 11–3.3(a) provides that recovery for injuries which cause death are to be
   limited to those accruing before death and shall not include damages for or by reason of death, except that the reasonable funeral expenses of the decedent, paid by the estate or for the payment of which the estate is responsible, shall be recoverable in such action. The damages recovered become part of the estate of the deceased.

with the recognition that an action brought under Pennsylvania's constitutionally mandated [3] survival statute is, unlike a wrongful death action,[4] not a new cause of action, but "merely continues in his personal representative the right of action which accrued to the deceased at common law . . . ." *Pezzulli v. D'Ambrosia*, 344 Pa. 643, 26 A.2d 659, 661 (1942). A claim under the survival act is predicated on the rights possessed by the decedent had he continued to live. Thus, "elements of permissible recovery . . . are well established—pain and suffering until the time of death, and the economic value of the life, as measured by the present worth of likely earnings during the period of life expectancy," *id.*, plus expenses for medical and surgical care, nursing, and funeral expenses if paid or incurred by the plaintiff. 12 P.S. § 1604.

Next, because we are dealing with a common law action of tort that has survived the death of the injured party, it is relevant to inquire whether the Pennsylvania courts distinguish between a claim brought by a tort victim on his own behalf and a claim brought by the personal representative of a tort victim who died. Only if Pennsylvania courts make such a distinction could foreign law be applied to the damage issue in this suit where a non-resident died before the suit was brought.

Our research indicates that the only distinction in damages thus far identified in cases in which the victim dies, is that the Pennsylvania appellate courts have not permitted recovery for loss of life's pleasures as a separate element of recovery from loss of life itself, thereby restricting recovery to the pecuniary loss to a decedent's estate of medical expenses, loss of past and future earnings, plus pain and suffering endured prior to death. Only a living person whose faculties have been impaired through injury may recover damages for loss of life's amenities. *Willinger v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 393 A.2d 1188 (Pa.1978). Thus, Pennsylvania recognizes an extremely narrow difference in the quantum of recovery when the possessor of the common law tort right dies before suit or verdict, but the difference is not relevant to this case.

Our research has disclosed no case in which Pennsylvania applied the law of different jurisdictions under the process of *depecage* [5] when a tort was committed in Pennsylvania and the victim was a foreign domiciliary who sued for personal injuries in Pennsylvania. We find no recorded Pennsylvania case which has denied a living foreign domiciliary plaintiff the benefits of the Pennsylvania measure of damages when based on a tort committed in Pennsylvania. It would therefore require more persuasion than we detect in appellee's brief for us to conclude that Pennsylvania's jural hospitality, willingly extended to a foreign domiciliary during his lifetime, would suddenly be withdrawn upon his death when his personal representative brings the action under the survival statute. Given the stated purpose of this statute—to continue the common law rights the decedent possessed in his lifetime—and given Pennsylvania's constitutional mandate that this right not be abridged, appellee nevertheless contends the Pennsylvania choice of law decisions support the district court's conclusion. It is to those decisions we now turn.

---

**3.** Pa.Const. art. 3, § 18, provides in part: "[Except in workmen's compensation cases the General Assembly may not] limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property, and in case of death from such injuries, the right of action shall survive, and the General Assembly shall prescribe for whose benefit such actions shall be prosecuted."

**4.** A claim based on the wrongful death statute is "a cause of action unknown to the common law" and only "for the benefit of certain enumerated relatives of the person killed by another's negligence" with damages limited to "the pecuniary loss occasioned to them through deprivation of the part of the earnings of the deceased which they would have received from him had he lived." *Pezzulli v. D'Ambrosia*, 26 A.2d 659, 661 (Pa.1942).

**5.** Professor Leflar has described *depecage* as the process whereby different issues in a single case arising out of a single set of facts are decided according to the laws of different states. R. Leflar, American Conflicts Law 221 (3d ed. 1977).

## III.

Modern Pennsylvania choice of law teaching begins with Justice Roberts' landmark opinion in *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964). There Pennsylvania abandoned the wooden *lex loci delicti* rule, and essentially adopted the Restatement view commonly known as the most significant relationship test:

> Contacts considered vital in determining the state of most significant relationship include place of injury, place of conduct, domicile of the parties, and the place where the relationship between the parties is centered. § 379(2). [Now Restatement (Second) of Conflict of Laws § 145(2) (1971).] The importance of the respective contacts is determined, in part, by considering the issues, the nature of the tort, and the purposes of the tort rules involved. § 379(3) [now § 145, Comments c–f]. However, Section 379a [redrafted as § 146] of the new Restatement provides: "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship with the occurrence and the parties as to the particular issue involved, in which event the local law of the latter state will govern."

203 A.2d at 802–03.

Applying this test in actions brought in Pennsylvania by decedents' representatives under wrongful death and survival statutes, the Supreme Court of Pennsylvania has held that (1) where a plane crashed in Colorado and caused the death of a Pennsylvania domiciliary, the Pennsylvania measure of damages would apply, and not the more restricted amount of damages provided by Colorado, *Griffith, supra* ; (2) where a plane crashed in Georgia and resulted in death to Pennsylvania domiciliaries, the Pennsylvania standard of simple negligence would apply to the Pennsylvania defendant, and not the more restrictive standard of gross negligence applicable in Georgia, *Kuchinic v. McCrory,* 422 Pa. 620, 222 A.2d 897 (1966); (3) where a Pennsylvania resident was injured in the course of his employment in New Jersey and received benefits under the New Jersey Workmen's Compensation Act, the law of the place of the injury would apply to preclude a third party's claim for contribution from plaintiff's Pennsylvania employer, *Elston v. Industrial Lift Truck Co.,* 420 Pa. 97, 216 A.2d 318 (1966); and (4) where a Pennsylvania guest passenger received injuries from a Delaware host in a Delaware automobile accident, the law of the place of injury would apply, even though the defendant was governed by a less stringent standard of conduct there and plaintiff was afforded less financial protection than in Pennsylvania, *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854 (1970).

## IV.

From these facially diverse results, what emerges is an evaluation of significant state contacts "on a qualitative rather than quantitative scale." *Cipolla v. Shaposka, supra,* 267 A.2d at 856. A careful examination of these choice of law decisions discloses a tension between two important considerations: the liberal compensation policy of Pennsylvania, as in *Griffith* and *Kuchinic,* versus the basic territorial approach of *Elston* and *Cipolla.* Indeed, we are reminded by the supreme court's latest pronouncement that "departures from the territorial view of torts ought not to be lightly undertaken." *Cipolla, supra,* 267 A.2d at 857. Various fact patterns might require one of these policies to be preferred over the other when they conflict, but if both considerations may be accommodated, the Pennsylvania courts would place great importance on each. To apply the Pennsylvania survival statute here would accommodate both policies.

While a Pennsylvania court, consonant with the rule of *Griffith, supra,* would consider applying the law of different states to the separate issues of liability and damages, we are convinced that in this case the Pennsylvania court would apply the measure of damages provided by its survival statute, as well as its substantive law of liability. We

are persuaded that, if confronted with these facts, the court would reason that the law governing recovery for a tort occurring in Pennsylvania should be the same for a victim who is able to prosecute his claim personally as for one who dies prior to filing suit. Because a survival statute, as distinguished from a wrongful death statute, merely keeps the decedent's cause of action alive, the Pennsylvania court probably would place a greater importance on New York's interests in the decedent, not in his survivors. New York's interest in applying its law of damages to its resident who chose to vacation in Pennsylvania would weigh lightly on the qualitative scale compared with Pennsylvania's policy of compensating tort victims when that state is the place of the tortious impact. Furthermore, having adopted the Restatement approach in *Griffith,* Pennsylvania would undoubtedly place a high qualitative significance on the factors set forth in Restatement (Second) of Conflict of Laws § 6(2)(e–g) (1971): a consideration of the basic policies underlying the particular field of law; the desire for certainty, predictability and uniformity of result; and ease in the determination and application of the law to be applied.

We think the analysis presented by Professor Cavers is consistent with this approach. In his treatise, he suggests a hypothetical which is identical to the case at bar, and asks whether the out-of-state tort victim should be denied the benefit of the more protective laws of the state where the injury occurred. On the issue of liability, he suggests general agreement that the regulatory function of standards of conduct requires application of the law of the state in which the defendant acted. On the more difficult question of the measure of damages, he argues that the out-of-state plaintiff should recover the more liberal benefits of the state of injury, despite a contention that this result is achieved at the expense of that state's own citizen, the defendant, even though the measure of damages does not purport to be punitive. We believe that Pennsylvania would be persuaded by Professor Cavers' analysis of this contention for precisely his reasons:

This contention neglects the consideration that the financial protection a state has prescribed, being a part of its provision for the general security, is in part a sanction for wrongfully causing harm. As a consequence its purposes include elements of deterrence and retribution even though it may be couched in essentially compensatory terms. When the laws of the state of injury are viewed in this light, the restrictive laws of the plaintiff's home state tend to fade into irrelevance. Furthermore, at least as important a consideration is concern for equal protection of the laws. Ought not the injured stranger to receive the same measure of protection that the citizen is accorded? I submit that an extension of the principle to support his claim is amply justified—and may be constitutionally requisite.

D. Cavers, The Choice-of-Law Process 144 (1966) (footnote omitted).

While ordinarily there may be some risk in suggesting that a state court would place reliance on a treatise, we believe we are correct in predicting Pennsylvania's acceptance of this analysis. Notwithstanding a vigorous dissent by Justice Roberts who cited a galaxy of authorities and cases from other jurisdictions, the majority in *Cipolla* relied chiefly on Professor Cavers' analysis, citing him four separate times, on each page of its relatively brief opinion. 267 A.2d at 855, 856, 856 n.3, and 857.

As previously indicated, although Pennsylvania is committed to a decisional process that requires a determination of whether the foreign domicile of a tort victim has "a more significant relationship with the occurrence and the parties," our research has unearthed no Pennsylvania precedent commanding a *depecage* result for a tort committed in that state. When Pennsylvania law has controlled liability, it has also fixed the measure of damages for the victim, be he living or dead at the time of suit. We have discovered no case that would subject a plaintiff in the Pennsylvania courts to a lower standard of financial protection once Pennsylvania law is found to be applicable.

Accordingly, we conclude that the district court erred in failing to accord appellant the benefit of the Pennsylvania survival statute in determining the damages to which he may be entitled. The judgment of the district court dismissing appellant's complaint will be reversed and the cause remanded for further proceedings consistent with this opinion.