Mary V. KIEHN, Individually, as Executrix of the Estate of James Henry Kiehn, Deceased, and as Natural Guardian of her minor children, Ryan A. Kiehn, Mark W. Kiehn, Sara E. Kiehn and Ross Kiehn, Plaintiff,

v.

ELKEM–SPIGERVERKET A/S KEMI–METAL, Defendant.

Civ. A. No. 83–0366.

United States District Court, M.D. Pennsylvania.

April 26, 1984.

---

Lewis S. Kunkel, Jr., Fred Speaker, Larry L. Miller, Pepper, Hamilton & Sheetz, Harrisburg, Pa., for plaintiff; Daniel J. Menniti, Mechanicsburg, Pa., of counsel,

Clyde W. McIntyre, McNees, Wallace & Nurick, Harrisburg, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

Before the court is plaintiff's motion for determination of the application of applicable damage law. The issues have been thoroughly briefed by the parties and are now ripe for our decision.

Plaintiff's husband, James Henry Kiehn, now deceased, was formerly an executive in the Pyrotek offices in Carlisle, Pennsylvania. Plaintiff still resides in Carlisle with her children. Mr. Kiehn was killed while on a business trip to Norway to visit the offices of defendant, a Norwegian corporation with which Pyrotek has dealings. While there on November 10, 1981 Mr. Kiehn and one of defendant's employees, Holger Walde, embarked on a trip in a small airplane which they had rented and which Walde piloted. Their intended destination as well as their point of departure were in Norway. They did not reach their destination, and were both killed when the airplane crashed near Mandel, Norway. Now for determination is whether Pennsylvania or Norwegian damage law applies. In an earlier memorandum in which we discussed the issue of *forum non conveniens,* we suggested, but did not decide, that Pennsylvania damage law would apply. We now re-examine our position.

Any discussion of choice of law in Pennsylvania, whose law we are bound to apply, must begin with the case of *Griffith v. United Airlines,* 416 Pa. 1, 203 A.2d 796 (1964). In *Griffith,* plaintiff's decedent, a Pennsylvania citizen, was a passenger on a United flight from Philadelphia to Phoenix, Arizona. United was incorporated in Delaware. The plane crashed *en route* in Denver, Colorado, and plaintiff's decedent was

killed. Suit was brought in Pennsylvania. The court abandoned the maxim of *lex loci delicti* "in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." 203 A.2d at 805. The court went on to explain the benefits of this approach:

"The merit of such a rule is that it gives to the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context and thereby allows the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of [the] particular litigation."

The court, balancing the interests, found Pennsylvania's to be the greater, since the contractual relationship between defendant and plaintiff's decedent was entered into there and since Pennsylvania had an interest in granting full recovery to the decedent's heirs and dependent survivors. Specific to damages, the court noted:

"The state in which the injury occurred, as such has relatively little interest in the measure of damages to be recovered unless it can be said with reasonable certainty that defendant acted in reliance on that state's rule. Moreover, where the tort is unintentional, the reliance argument is almost totally untenable."

203 A.2d at 806.

There are two problems which prevent us from applying *Griffith* easily to the facts before us. First, *Griffith* is factually a case of "false conflict" as is the subsequent case of *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966). That is, the conflict arises only by reason of the outmoded and rejected *lex loci delicti* rule. The site of the accident in both cases was purely fortuitous, and the state in which the accident occurred had no real interest in the resolution of the parties' conflict.[1]

The second problem in the application of *Griffith* is the tension created by the subsequent case of *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970). This tension has been characterized as "between two important considerations: the liberal compensation policy of Pennsylvania, as in *Griffith* and *Kuchinic* versus the basic territorial approach of *Elston*[2] and *Cipolla*," *Broome v. Antlers' Hunting Club*, 595 F.2d 921, 924 (3d Cir.1979). In *Cipolla*, the plaintiff, a citizen of Pennsylvania, was injured in an automobile accident in Delaware while *en route* from Wilmington, Delaware to Pennsylvania. At the time of the accident, he was a passenger in a car driven by the defendant, a citizen of Delaware, and owned by the defendant's father, also a Delaware citizen. Delaware had a guest statute which barred recovery by a guest on an action for a host's negligence. The court professed to engage in a qualitative analysis of each state's contacts with the accident, but in reality appeared to find that Delaware law was applicable because of that state's greater number of contacts with the accident. It recognized in Pennsylvania only the interest in permitting the guest (a Pennsylvania citizen) to recover for the host's negligence, while it identified in Delaware a countervailing interest in protecting the host (a Delaware citizen). The court also acknowledged that Delaware would have an interest in the insurance rates which would be affected by the outcome of the litigation since the car involved was housed and registered in Delaware. The court went on to observe:

"Also, it seems only fair to permit a defendant to rely on his home state law when he is acting within that state.... Inhabitants of a state should not be put in jeopardy of liability exceeding that created by their state's laws just because a visitor from a state offering higher protection decides to visit there. This is, of course, a highly territorial approach,

---

1. It has been observed in the briefs that the site of an accident is always fortuitous since an accident is by definition an unplanned and unintended event. What we mean by the usage here is that the relevant state has no interest in or relationship to the parties or the accident

except that the accident occurred within its borders.

2. *Elston v. Industrial Lift Truck Co.*, 420 Pa. 97, 216 A.2d 318 (1966).

but departures from the territorial view of torts ought not to be taken lightly. The very use of the term true conflict implies that there is no one correct answer, but as a general approach a territorial view seems preferable to a personal view."

267 A.2d at 856–57.

■ The derivation of a rule of law from the tension thus generated between *Griffith* and *Cipolla* is difficult.[3] We believe that Pennsylvania has a "flexible rule" which requires the court to determine which state has the greater interest in applying its law to a particular issue, *Reyno v. Piper Aircraft Co.*, 630 F.2d 149 (3d Cir.1980) *rev'd on other grounds*, 454 U.S. 235, 238, 102 S.Ct. 252, 257, 70 L.Ed.2d 419 (1981), *Cipolla.* In this regard, significant contacts with a state may be relevant:

"In determining which state has the greater interest in the application of its law, one method is to see what contacts each state has with the accident. The contacts being relevant only if they relate to the 'policies and interests underlying the particular issue before the court.' When doing this it must be remembered that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale."

*Cipolla,* 267 A.2d at 856 (quoting *Griffith,* 203 A.2d at 805), quoted in *Reyno,* 630 F.2d

at 170. As is implied, the analysis may lead the court to apply laws from different states to the various issues in a single case through a process called *depecage.* *See Broome,* 595 F.2d at 923, 924. The interest analysis is "territorial based" only to reflect basic principles of fairness, as outlined in *Cipolla.*

■ It is evident that Norway has significant contacts with this case which are underpinned by important state interests. Norway was the site of the accident, the plane involved was rented there, and the trip planned by the decedent was entirely within its boundaries. Obviously, Norway would have a significant governmental interest in regulating air traffic within its borders and in deterring accidents of this kind. These interests, however, seem appropriately served by applying Norwegian law to the liability issues as we have previously indicated and as, apparently, the parties have agreed.[4]

Our analysis of the damage issue is somewhat different. The defendant is of course a Norwegian corporation with offices in Norway, although it does substantial business in the United States and in Pennsylvania in particular. The pilot of the plane, although a resident of Norway and an employee of the defendant, was a German citizen. Norway would thus have an interest in shielding its resident business, a participant in its social welfare state, from an excessive verdict. On the

---

**3.** Indeed, a consistent interpretation of the principles of *Griffith* alone has proved elusive. In the case of *Reyno v. Piper Aircraft Co.*, 479 F.Supp. 727, 736 (M.D.Pa.1979), Judge Herman of this court held that since *Griffith* Pennsylvania employed the "significant contacts" analysis suggested by the Restatement (Second) of Conflicts and distinguished this approach from the governmental interest analysis approach used by California courts. Similarly, *Broome v. Antlers' Hunting Club,* 595 F.2d 921, 924 (3d Cir. 1979) the Court of Appeals concluded that in *Griffith* the Pennsylvania Supreme Court "abandoned the wooden *lex loci delicti* rule and essentially adopted the Restatement view commonly known as the most significant relationship test." However, in reversing Judge Herman's *Reyno* opinion, the appellate court wrote that in *Griffith,* the court had sought to synthesize the essence of three alternative approaches to choice

of law analysis: Professor Currie's emphasis on application of the forum's law, Professor Ehrenzweig's stress on the interests of the parties, and the "significant contacts" approach of the Restatement. The result, the court concluded was a governmental interest analysis approach, like that used by the California courts. *Reyno v. Piper Aircraft Co.,* 630 F.2d 149, 170 (3d Cir. 1980). The United States Supreme Court reversed the Court of Appeals and reaffirmed the District Court on other grounds, but did not decide the correctness of the appellate court's choice of law analysis. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 260, 102 S.Ct. 252, 268, 70 L.Ed.2d 419, 438 (1981).

**4.** Moreover, these interests will not be offended by the application of Pennsylvania damage law.

other hand, Pennsylvania has an interest in compensating the decedent's heirs and dependents, all citizens of Pennsylvania, for his death.[5]

■ The latter interest is substantial and is one of the features which distinguishes the present case from *Cipolla,* which involved only an action for personal injury, while the case before us involves a survival and wrongful death action.[6] We neither believe this distinction so empty as defendant suggests nor so inevitably susceptible to the *reductio ad absurdum* defendant proposes. That is, the significance of the contact does not turn merely upon the seriousness of the injury. Rather, causes of action in wrongful death and survival cases are unique in that they are specifically authorized by statute. That this is indicative of a state interest of special significance has been recognized by the courts. *See, e.g., Scott v. Eastern Airlines, Inc.,* 399 F.2d 14 (3d Cir.1967), *cert. denied,* 393 U.S. 979, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968); *Griffith, supra.* Indeed, the court in *Griffith* pointed out in pertinent part that

"Pennsylvania's interest in the amount of recovery ... is great.... Our Commonwealth, the domicile of decedent and his family, is vitally concerned with the administration of decedent's estate and the well-being of the surviving dependents to the extent of granting full recovery, including expected earnings. This policy is so strong that it has been embodied in the Constitution of Pennsylvania, Article III, Section 21 P.S." [7]

203 A.2d at 807.

■ We do not say that this is a case of false conflict in which Norway has no interest, because an award of damages to a plaintiff necessarily involves an award against a defendant, here a Norwegian citizen. In view of the strong interests and policies of Pennsylvania at stake in the damage aspect of this litigation, we find Pennsylvania's contacts and interests to be qualitatively greater than Norway's with respect to this narrow issue. In reaching this conclusion, we do not ignore the import of the Pennsylvania Supreme Court's quote from Professor Cavers in *Cipolla:*

"[i]t seems only fair to permit a defendant to rely on his home state law when he is acting within that state

'Consider the response that would be accorded a proposal that was the opposite of this principle if it were advanced against a person living in the state of injury on behalf of a person coming there from a state having a higher standard of care or of financial protection. The proposal thus advanced would require the community the visitor entered to step up its standard of behavior for his greater safety or lift its financial protection to the level to which he was accustomed. Such a proposal would be rejected as unfair. By entering the state or nation, the visitor has exposed himself to the risk of the territory and should not subject persons living there to a financial hazard that their law had not created.' Cavers, [The Choice of Law Process], at 146–7 [1965]"

267 A.2d at 856. Because the conduct complained of was unintentional, defendant could not have relied on Norwegian damage law in molding its behavior. *See Griffith,* 203 A.2d at 806. It could certainly be

---

5. It has also been pointed out that Pennsylvania has a subrogation interest in the outcome of this case by virtue of Workmens Compensation payments.

6. In *Cipolla,* the court never really reached the damage issue because it snuffed out liability on the basis of the Delaware guest statute. The court thus deferred to Delaware's policy of protecting its host/resident. In so doing, however, it remarked on considerations of fairness to

Delaware citizens and on the adverse impact of application of Pennsylvania liability law on Delaware insurance rates. These comments do appear to be germane to the case before us.

7. The Constitutional provision actually provides that neither in the case of *death nor* in the case of injury to the person, shall the amount of recovery be limited by the legislature. It is further provided that "in the case of death from such injuries, the right of action shall survive."

argued, however, that defendant is unfairly required to "lift its financial protection" to a level not demanded by Norwegian law. To accept this argument would be naively to ignore the facts of this case. Although the accident here did occur within Norway's borders, we cannot view the facts so simplistically as to define it solely on the basis of the respective citizenships of the parties. Defendant was and is a multinational corporation which conducts sufficient business within Pennsylvania to confer jurisdiction on this court.[8] An active and ongoing business relationship was maintained by the defendant with Pyrotek, a Pennsylvania corporation, through plaintiff's decedent, a Pennsylvania citizen. The decedent was in Norway because of Pyrotek's business with the defendant and was engaged in furthering that business at the time of the fatal accident. On the basis of materials which have been filed with this court, we can envision other situations in which defendant could be subject to tort liability in Pennsylvania by virtue of its business contacts with this jurisdiction. Under these circumstances, we cannot say that defendant ought to be unreasonably surprised by the application of Pennsylvania damage law in this instance. Our decision does not therefore result in the unfairness which concerned the court in *Cipolla* as it might if it were predicated only on an isolated visit to Norway by a Pennsylvania citizen.

8. Although jurisdiction was originally contested, we have been advised that defendant is now willing to concede this issue.