**Howard KUNREUTHER, Individually and as Executor of the Estate of Sylvia Kunreuther, his wife, Deceased**

v.

**OUTBOARD MARINE CORPORATION.**

Civ. A. No. 87–8330.

United States District Court, E.D. Pennsylvania.

June 23, 1989.

Stephen R. Bolden, Fell & Spalding, Philadelphia, Pa., for plaintiff.

Harry A. Short, Liebert, Short, Fitzpatrick & Hirshland, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DUBOIS, District Judge.

Presently before the Court is the Motion of the defendant, Outboard Marine Corporation ("Outboard Marine"), for an Order Holding that the Substantive Law of the Country of Jamaica Should Apply to the Issues of Liability and Damages. Outboard Marine cites Fed.R.Civ.P. 44.1 as au-

thority for this Court to issue such an Order. Rule 44.1 of the Federal Rules of Civil Procedure provides that:

A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

That rule does not provide for the pretrial adjudication of the choice of laws issue. However, that issue may be decided pretrial under Fed.R.Civ.P. 16. *See Cannon v. Hilton Hotels Corp.*, 664 F.Supp. 199 (E.D.Pa.1987).

This is a diversity action to recover for the death of Sylvia Kunreuther. The decedent and her husband, plaintiff Howard Kunreuther, were residents and citizens of Pennsylvania. Outboard Marine, is a Delaware Corporation with its principal place of business in Waukegan, Illinois.

On June 3, 1987, plaintiff and the decedent were vacationing in Montego Bay, Jamaica. On that date, while the decedent was snorkeling in Jamaican waters, she was struck by the propeller of a 175 horsepower Evinrude outboard motor allegedly manufactured by the defendant and being used to power a twenty-two foot Mako motorboat.

The boat was operated by a Jamaican citizen and was owned by another Jamaican citizen. Neither of those individuals are parties to this action.

The decedent received initial treatment at a Jamaican hospital. Later, she was taken by air ambulance to Mt. Sinai Hospital in Miami, Florida. She died on June 4, 1987, in Miami, allegedly as a result of the propeller wounds.

The plaintiff's action against Outboard Marine is premised on the theory that the motor was of defective design. Specifically, plaintiff contends that the motor should have been equipped with a propeller guard and that injuries to the decedent would have been much less severe if the propeller had been guarded.

■ Outboard Marine contends that Jamaican law should apply to the issues in this case. While I agree that Jamaican law should be applied on the issue of liability, I am not convinced that Jamaican law should govern the issue of damages.

Because this action is brought under this Court's diversity jurisdiction, I must apply the choice of law rules of the forum state to determine which law governs the substantive issues of this case. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

In *Griffith v. United Airlines*, 416 Pa. 1, 203 A.2d 796 (1964), the Pennsylvania Supreme Court abandoned the strict *lex loci delicti* choice of law rule which provided that the law of the place of injury would be applied in all tort actions brought in Pennsylvania. *Griffith* was supplemented and clarified by another Pennsylvania Supreme Court case, *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970). These two cases have defined and established the Pennsylvania choice of law rules. *Blakesley v. Wolford*, 789 F.2d 236 (3d Cir.1986).

The *Cipolla/Griffith* choice of law analysis combines the Restatement's "most significant relationship" analysis with an "interest analysis." *Blakesley*, 789 F.2d at 239. One method adopted by the Pennsylvania Supreme Court to determine which state has the greater interest in the application of its law is to analyze qualitatively the contacts each state has with the accident. *Cipolla*, 267 A.2d at 856. "Contacts considered vital in determining the state of the most significant relationship include place of injury, place of conduct, domicile of the parties, and the place where the relationship between the parties is centered." *Griffith*, 203 A.2d at 802–03.

Analyzing the relevant contacts, no state has a particularly strong interest in having its law applied when compared with the contacts of the other states. The only contacts Pennsylvania has with this accident and injury are that it is the domicile and

residence of the plaintiff and it was the domicile and residence of the decedent. The only contacts Jamaica has with the accident and injury are that it was the place of the injury [1] and the place where the relationship between the parties was centered, such as it exists. The conduct in question, the designing, manufacturing and initial sale of the motor, all occurred outside of Pennsylvania and Jamaica. In addition, the defendant is not a corporation of, nor does it have its principal place of business in, Pennsylvania or Jamaica.

Because the contacts that Pennsylvania and Jamaica have to the accident do not clearly establish which law to apply, the Court must look to which state has the greater interest in applying its own law. *See Lopata v. Bemis Company, Inc.*, 406 F.Supp. 521 (E.D.Pa.1975), *aff'd*, 546 F.2d 417 (3d Cir.1976). On the issue of whether the motor was defective, Jamaica clearly has the greater interest in having its law apply. The issue to be decided in this case is whether boats operating in Jamaican territorial waters should be required to have guards placed on the propellers. Although Pennsylvania has a strong interest in protecting its citizens, Jamaica has a stronger interest in determining the standards that govern boats within its territorial waters.

On the issues raised by the facts of this case, the primary conflict between Jamaican law and Pennsylvania law concerns the doctrine of enhanced injury. The doctrine, developed by the Eighth Circuit in *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir.1968), "extends the manufacturer's liability to situations in which the defect did not cause the accident or initial impact, but rather increased the severity of the injury over that which would have occurred ab-

sent the defective design." *Barris v. Bob's Drag Chutes and Equipment*, 685 F.2d 94, 99 (3d Cir.1982). Pennsylvania law recognizes the enhanced injury doctrine. *Id.*, 685 F.2d at 99 n. 6. *See also, Huddell v. Levin*, 537 F.2d 726 (3rd Cir.1976). In the present case, the enhanced injury doctrine could extend liability to Outboard Marine even if the alleged product defect in the engine did not cause the accident if the alleged defect increased the severity of the injury sustained by the decedent.

Jamaican law does not recognize the enhanced injury doctrine. Although plaintiff suggests in his brief that Jamaican law would allow recovery on a theory of enhanced injury, the affidavits from Jamaican attorneys submitted by the plaintiff and the defendant clearly state that the enhanced injury doctrine is not recognized in that country. Therefore, Jamaican law requires the plaintiff to prove causation before liability can be established. The affidavits also state Jamaica has no statute requiring that guards be placed on propellers or outboard motors, and Jamaican courts have never found that the absence of a guard constitutes a negligent omission.

Jamaica has little interest in having its law of causation applied to the facts of this case. Although Jamaica has a strong interest in regulating the design of boats in its territorial waters, that interest does not extend to the application of a theory of causation to a products liability suit between U.S. parties. Accordingly, Pennsylvania law, including the doctrine of enhanced injury, shall be applied to the issue of causation [2]; Jamiacan law shall be applied to all other liability issues.

1. Without more, the place of the injury may be dispositive on the choice of law issue. "Cases applying the *Griffith/Cipolla* test make clear that where, as here, the place where the injury occurred was not fortuitous, as for example, in an airline crash, the place of injury assumes much greater importance, and in some instances may be determinative." *Blakesley*, 789 F.2d at 243. "When a party voluntarily and intentionally travels to another state, the location of an injury incurred there is not fortuitous." *Tonkon v. Denny's Inc.*, 650 F.Supp. 119, 121 (E.D.Pa.1986). Therefore, the place where Mrs.

Kunreuther was injured was not fortuitous, and the contacts with Jamaica gain added significance.

2. Under the doctrine of depecage, different issues in a single case arising out of a single set of facts may be decided according to the laws of different jurisdictions. *See, Broome v. Antlers' Hunting Club*, 595 F.2d 921, 923 n. 5 (3d Cir. 1979); *Kiehn v. Elkem–Spigerverket A/S Kemi–Metal*, 585 F.Supp. 413, 416 (M.D.Pa.1984); *Casper v. Cunard Line, Ltd.*, 560 F.Supp. 240, 243–44 (E.D.Pa.1983).

On the issue of damages, Jamaica has almost no interest in having its law applied. That is so because neither party to the action is a resident or citizen of that country.

Defendant contends that *Blakesley* controls the issue of applicable damage law. However, that case is distinguishable from the present case. In *Blakesley,* the Third Circuit held that Texas law, not Pennsylvania law, should control the issue of damages in a case where a Pennsylvania resident brought suit against a Texas physician for medical malpractice occurring in Texas. However, crucial to that decision was the holding of the Pennsylvania Supreme Court in *Cipolla,* which stated, "Inhabitants of a state should not be put in jeopardy of liability exceeding that created by their state's laws just because a visitor from a state offering higher protection decides to visit there." *Blakesley,* 789 F.2d at 243, *quoting, Cipolla,* 267 A.2d at 856–57. Since Outboard Marine is not an inhabitant of Jamaica, it cannot claim the protection of Jamaican law under *Cipolla.*

The interests of Jamaica and Pennsylvania in having their law applied to the issue of damages is best discussed in *Griffith.* "The state in which the injury occurred, as such, has relatively little interest in the measure of damages to be recovered unless it can be said with reasonable certainty that defendant acted in reliance on that state's rule." *Griffith,* 203 A.2d at 806. Outboard Marine Corporation did not rely on Jamaican law in this case; indeed, the motor may not have even been sold in Jamaica.

Pennsylvania's interest on the issue of damages is great. Pennsylvania was the domicile of the decedent and it is the domicile of the plaintiff; as such it is "vitally concerned with the administration of the decedent's estate and the well-being of the surviving dependents, to the extent of granting full recovery...." *Id.* at 807. Since Pennsylvania's interest is greatest, Pennsylvania law shall be applied to all damage issues in this case.

Plaintiff also raises the issue of the applicability of the Death on the High Seas Act to this case. 46 U.S.C.App. § 761 et seq. If the Death on the High Seas Act applies, it will be the plaintiff's exclusive remedy. *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986).

The Death on the High Seas Act applies to accidents occurring within foreign territorial waters. *Jennings v. Boeing Co.,* 660 F.Supp. 796, 803 (E.D.Pa.1987); *but see Roberts v. United States,* 498 F.2d 520, 524 (9th Cir.1974). Therefore, the Act will control this case if this Court has subject matter jurisdiction in admiralty pursuant to 28 U.S.C. § 1333.

An accident invokes admiralty jurisdiction if two conditions are met: First, the injury must have occurred on navigable waters [3]; and second, the wrong must bear a significant relationship to traditional maritime activity. *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Neither party disputes that the accident in this case occurred on navigable waters. The issue the Court must decide is whether the alleged wrong committed by the defendant has a sufficient nexus to or with traditional maritime activities to invoke admiralty jurisdiction. I hold that it does not.

To determine whether an alleged tort bears a significant relationship to traditional maritime activities, courts in the Third Circuit are directed to examine four factors: (1) the function and role of the parties; (2) the types of vehicles and instrumentalities involved; (3) the causation and nature of the injury suffered; and (4) traditional concepts of the role of maritime law. *Eagle–Picher Industries, Inc. v. United States,* 846 F.2d 888, 896 (3d Cir.1988).

An analysis of these factors reveals that the alleged tort in this case does not bear a significant relationship to traditional maritime activities. First, the function and roles of the parties only minimally relate to

---

**3.** This requirement is known as the maritime locality rule.

**1308**

traditional maritime activities.[4] I reach the same conclusion after examining the second factor, types of vehicles and instrumentalities involved.

The third factor, causation and the type of injury, suggests that admiralty jurisdiction is not proper. As the plaintiff notes, a collision between a pleasure boat and a swimmer may provide a sufficient nexus with traditional maritime activities when navigational error may exist. "An allegation of navigational error appears to be the key to admiralty jurisdiction when dealing with small pleasure craft." *Souther v. Thompson,* 754 F.2d 151, 153 (4th Cir. 1985); *see also, In re Paradise Holdings, Inc.,* 795 F.2d 756 (9th Cir.1986); *Medina v. Perez,* 733 F.2d 170 (1st Cir.1984). The plaintiff alleges no navigational error on the part of the defendant. Rather, the wrong alleged is that the defendant failed to design and equip the outboard motors it manufactures and sells with propeller guards.

The last factor the Court must examine is the traditional concepts of the role of maritime law. In *Executive Jet,* Justice Stewart defined these concepts when he wrote: "[T]he law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage." *Executive Jet,* 409 U.S. at 270, 93 S.Ct. at 505. The issues in this case do not encompass any of the concepts outlined by Justice Stewart.

Because the nexus between the alleged tort and traditional maritime activity is insufficient, the admiralty jurisdiction of this Court will not be invoked, and the Death on the High Seas Act will not be applied.

An appropriate Order follows.

### ORDER

AND NOW, to wit, this 23rd day of June, 1989, upon consideration of the Motion of the defendant, Outboard Marine Corporation ("Outboard Marine"), for an Order Holding that the Substantive Law of the Country of Jamaica Should Apply to the Issues of Liability and Damages, and the response of the plaintiff, Howard Kunreuther, and good cause appearing, IT IS ORDERED that:

1. The laws of Pennsylvania shall be applied to all issues regarding damages and causation; and,

2. The laws of Jamaica shall apply to all other issues regarding liability.

---

4. Outboard Marine is a manufacturer of outboard motors; conceivably this is a traditional maritime role, but I do not find that compelling under the facts of this case.