**Tamera Pierson TYSON**

v.

**The GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.**

**Civ. A. No. 92–3378.**

United States District Court, E.D. Pennsylvania.

Jan. 28, 1993.

64

Robert B. White, Jr., Michael G. Sabo, Rapp, White, Janssen & German, Ltd., Philadelphia, PA, for plaintiff.

Thomas P. Wagner, Michael P. Zipfel, Rawle & Henderson, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

NAYTHONS, United States Magistrate Judge.

Presently before this Court is defendant's motion for partial summary judgment and plaintiff's opposition thereto. This is a negligence action in which plaintiff claims damages for personal injuries arising from an accident in defendant's warehouse. Plaintiff, a truck driver, claims that she was injured when she was struck by a "pallet jack" driven by an agent of defendant while she was unloading her truck in defendant's Maryland warehouse. Plaintiff is a Pennsylvania resident and the defendant is incorporated in Maryland.

Defendant has asked this Court to find that Maryland law applies to the substantive issues of the case. Plaintiff opposes defendant's motion, and claims that Pennsylvania law should be applied to all issues in the case, or, in the alternative, that Maryland law be applied to the liability

issues and Pennsylvania law be applied to the damage issues.

It is well settled, and undisputed by either party, that in diversity actions, the choice rules of the forum state govern any conflict of law issues. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3rd Cir.1988). Therefore, Pennsylvania's choice of law rules will govern the instant dispute.

■ As an initial matter, plaintiff claims that because defendant did not explain what policy interests Maryland has in the application of its contributory negligence rule, that defendant has failed to meet its burden under Rule 56. This Court disagrees. Defendant closely analogized its case with that of *Shuder v. McDonald's Corp.*, 859 F.2d 266 (3rd Cir.1988), in which a Pennsylvania plaintiff brought a personal injury action against a Virginia defendant. As in the present case, the defendant's home state of Virginia had a contributory negligence law. The instant defendant noted in its brief that the purpose of the Virginia law was to "protect defendants and encourage people to exercise care for their safety". Defendant's Motion for Partial Summary Judgment at 5. It is clear to this Court that defendant was indicating that the purpose of the Maryland law was identical. Defendant has met its burden under Fed.R.Civ.P. 56.

■ The parties agree that the instant case presents this Court with a true conflict. A true conflict exists when states have conflicting policy interests in having their law applied. In the instant case, Pennsylvania's policy of having plaintiffs at least partially compensated even if negligent conflicts with Maryland's policy of protecting defendants and insuring that plaintiffs exercise the greatest possible care for their own safety. Since a true conflict exists, an analysis of Pennsylvania's choice of law rules is required.

■ Although the Pennsylvania Supreme Court first abandoned the Restatement of Conflicts test of *lex loci delicti*, or the law of the place of the injury rule, in 1964 in the case of *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), application of Pennsylvania's choice of law rule remains a difficult task. In *Griffith*, the Supreme Court outlined the new rule, while specifically abandoning the *lex loci delicti* rule. The Court held that an interest analysis rule would apply instead, wherein the contacts each state had to the parties and accident would be compared. The law of the state that had the greater interest, that is, the state that had the more qualitatively significant contacts, would apply to the substantive issues of the case. *Id.* 203 A.2d at 806.

The *Griffith* Court did not explicitly adopt the language of the Restatement Second of Conflicts, but did cite it as a basis for the new choice of law rules being created. The Restatement Second's position combines a contacts counting approach with a territorial approach. The restatement suggests that torts should be governed by the local law of the state which has the most significant contacts to the parties and the accident. Vital contacts include, the place of injury, the place of conduct, the domicile of the parties, and the place where the relationship between the parties is centered. *Griffith v. United*, 203 A.2d at 802, *citing* The Restatement Second of Conflicts § 379(2).

In reaching its decision that Pennsylvania law should be applied to a claim stemming from a plane crash in Colorado, the *Griffith* Court noted that Colorado had no policy interest in having its law applied. Neither party was from Colorado, nor was any medical aid rendered in Colorado, as the plaintiff's death was instantaneous. Colorado's law limiting damages had no relevance to the facts before the Court. Because the defendant was not a Colorado resident, there was no Colorado interest in protecting it; and because Pennsylvania was the forum, there was no interest in a more streamlined trial. On the other hand, the Court noted that Pennsylvania had a great many contacts, including being the home state of the decedent and his family, and furthering Pennsylvania's policy of making sure any surviving dependents are

granted a full recovery of damages, including expected earnings. Because the site of the accident was merely fortuitous, Pennsylvania law was applied.

*Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970) further described Pennsylvania's choice of law analysis. The Court stated:

> One method is to see what contacts each state has with the accident, the contacts being relevant only if they relate to the "policies and interests underlying the particular issue before the court." ... The weight of a particular contact must be measured on a qualitative rather than quantitative scale.

*Id.* 267 A.2d at 856, *quoting Griffith v. United Air Lines*, 203 A.2d at 805. The Court also noted that "it seems only fair to permit a defendant to rely on his home state's law when he is acting within that state." *Cipolla v. Shaposka*, 267 A.2d at 856. Although admitting that this was a "highly territorial approach", the Court stated that "departures from the territorial view of torts ought not to be lightly undertaken." *Id.* at 857, *quoting Gordon v. Parker*, 83 F.Supp. 40, 42 (D.Mass.1949)

*Cipolla* appears to embrace both a "contact counting" and a territorial analysis. This apparent contradiction was explained in later case law. As stated by the Superior Court in *Laconis v. Burlington County Bridge Comm.*, 400 Pa.Super. 483, 583 A.2d 1218 (1990), "in an action for personal injuries, the law of the state where the injury occurred normally determines the rights and liabilities of the parties, unless another state, applying the contacts test, has a more significant relationship to the occurrence and parties." *Id.* 583 A.2d at 1223. It thus appears that Pennsylvania mandates that where the contacts of the state where the injury occurs are qualitatively equal or greater than any other state, the law of the place of the accident will apply. If another state has a greater interest however, then that state's law must be applied.

■ Having examined Pennsylvania's choice of law test, this Court will now apply it to the facts of the instant case.

Both Pennsylvania and Maryland have an interest in the parties. Plaintiff is a Pennsylvania resident and received medical treatment in Pennsylvania following the accident. Plaintiff also claims that the fact that she received worker's compensation benefits in Pennsylvania should be considered a significant contact. However, this factor cannot be considered a contact for purposes of plaintiff's claim. An employer who pays a worker's compensation claim has the right to subrogation, that is, to sue a third party for damages in place of plaintiff. 77 P.S. § 671. In such an instance, "the state where the worker's compensation policy is regulated is the state with the most significant contacts regarding worker's compensation subrogation." *Ellifritz v. Betti*, No. 91–CV–1846, Slip Op. at 5, 1992 WL 22231 (E.D.Pa. J. Hutton, Feb. 4, 1992). The present case is not a subrogation claim, and the fact that plaintiff is receiving worker's compensation under the Pennsylvania system is not applicable.

■ Plaintiff also claims as a significant contact the fact that her employer is headquartered in Pennsylvania. Again, this has no relevance to Pennsylvania's interests in having its law applied and will not be considered. Plaintiff points out that defendant maintains places of business in many states other than Maryland, including Pennsylvania. This is also not particularly relevant to the choice of law analysis. Defendant is incorporated in Maryland. The fact that they do business in Pennsylvania may be relevant for jurisdictional purposes, but is not relevant in an interest analysis. Plaintiff is a truck driver who has admitted to making deliveries to defendant's outlets in Maryland, New Jersey, New York and Virginia. *See* Plaintiff's brief in opposition at 8. Under plaintiff's reasoning, she could be considered to have a significant contact with Maryland because she has made deliveries there, and should expect to be liable under the laws of other states. Defendant correctly categorizes plaintiff's arguments as "red herrings", and they will not be considered in this Court's analysis.

■ The contacts with Maryland are that it is the state of incorporation of the defendant, the place of the injury, the place of the conduct causing the injury, and the place of the relationship between the parties.[1] Defendant relies strongly on *Shuder v. McDonald's Corp., supra.* to support its claims that these contacts are qualitatively more important than Pennsylvania's contacts. In *Shuder*, plaintiff was a Pennsylvania resident who, on a trip to Virginia, fell and injured herself outside a McDonald's restaurant. The Court of Appeals found that Virginia had the more significant contacts because it has an interest in "how persons conduct themselves within the state."[2] *Shuder v. McDonald's Corp.*, 859 F.2d at 272. The Court noted that, as in the instant case, the place of the accident was not fortuitous[3]. The remaining contacts were similar to those of the present case as well. Thus, *Shuder* strongly indicates that Maryland has the more significant contacts. This Court's analysis of the contacts yields an identical result. Maryland's contacts are more significant than Pennsylvania's, being not only the place of the defendant's incorporation, but also the place where the actions leading to the accident as well as the accident itself occurred. That plaintiff received medical treatment in Pennsylvania is balanced by the insurance concerns of Maryland. Therefore, because Maryland's contacts are more significant[4], *Griffith, supra.; Cipolla, supra.;* and *Shuder, supra.* compel this Court to grant defendant's motion and apply Maryland law to the issues of the case.

■ Finally, plaintiffs ask that if this Court finds that Maryland law applies to the liability issues of the case, that this Court apply the principle of depecage and apply Pennsylvania law to the damage issues. The sole case plaintiff cites for this argument, *Kiehn v. Elkem–Spigerverket*, 585 F.Supp. 413 (M.D.Pa.1984), is inapplicable to the facts of this case. The *Kiehn* Court distinguished its case from *Cipolla* and its progeny on the basis that *Kiehn* was a wrongful death action, where the effects of the Pennsylvania estate of plaintiff/decedent gave Pennsylvania a greater interest in damages than it would have in a personal injury action. It would be inappropriate to apply depecage to a personal injury case such as this Court has before it.

An appropriate order follows.

### ORDER

NOW, this 28th day of January, 1993, IT IS HEREBY ORDERED that defendant's motion for summary judgment is GRANTED and that the law of the State of Maryland shall govern the substantive issues of this case.

---

1. Although the relationship between defendant and plaintiff's employer might have been centered elsewhere, it appears from the pleadings that plaintiff's sole dealings with defendant were in making deliveries, in this case, to the Maryland warehouse.

2. Plaintiff contends that she did not "voluntarily" go to Maryland as did the plaintiff in *Shuder* because she was ordered to do so by her employer. This argument is untenable. Plaintiff is voluntarily employed in a job which she knows involves interstate travel and deliveries. Therefore, she cannot be said to have involuntarily entered the state.

3. Plaintiff claims that because defendant does business in many other states and because plaintiff's job requires her to visit other states, the place of the accident was fortuitous. However, for purposes of choice of law analysis, "fortuitous" has a far more narrow definition than plaintiff attaches to it. The state of an accident is fortuitous *only* if that state has "*no* interest in or relationship to the parties or the accident except that the accident occurred within its borders." *Kiehn v. Elkem–Spigerverket*, 585 F.Supp. 413 (M.D.Pa.1984). *See also Griffith v. United Air Lines, supra.* Since Maryland is the state of defendant's incorporation and the state in which the alleged negligent conduct occurred, it clearly has an interest in both the parties and the accident.

4. As noted above, even if the contacts of the two states were merely equal, *Cipolla, supra.* and *Laconis, supra.* would require that the law of the place of the injury govern the case.